**James R. Patterson** (Admitted *Pro Hac Vice*)
Email:  jim@pattersonlawgroup.com
**Allison H. Goddard** (Admitted *Pro Hac Vice*)
Email:  ali@pattersonlawgroup.com
PATTERSON LAW GROUP
402 W Broadway, 29th Floor
San Diego, CA 92101
Telephone:    (619) 398-4760
Facsimile:    (619) 756-6991

**Steve D. Larson,** OSB No. 863540
Email: slarson@stollberne.com
**Jennifer S. Wagner**, OSB No. 024470
Email:  jwagner@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Suite 500
Portland, OR 97204
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SCOTT NANCE and FREDERICK FREEDMAN, an individual, on behalf of themselves, all others similarly situated, and the general public,<br><br>        Plaintiffs,<br><br>        v.<br><br>MAY TRUCKING COMPANY, an Idaho corporation; DOES 1 through 100,<br><br>        Defendant(s). | Case No. 3:12−cv−01655−HZ<br><br><br>DECLARATION OF JOSEPH A. KROCK |

I, Joseph A. Krock, Ph.D., declare as follows:

1.      I have personal knowledge of the facts set forth herein, and if called as a witness, could and would testify competently thereto.  I make this declaration in support of *Plaintiffs' Motion for Class Certification.*

## I.      INTRODUCTION

2.      I am an economist and Director at The Claro Group, LLC ("Claro"), a multi-disciplinary consulting firm with offices in Los Angeles, Chicago, Houston and Washington, D.C.  I have been retained in connection with various types of employment litigation including wage and hour class actions, discrimination, wrongful termination, personal injury and wrongful death matters, and employment cases in which class certification and economic damages were at issue.

3.      I earned Master and Doctorate Degrees in Economics from the University of Chicago, and I earned a Bachelor Degree in Economics-Mathematics from the University of California, Santa Barbara.  I also served as a lecturer in Economic Theory at the University of Chicago.  I regularly speak before professional groups regarding, among other topics, the use of sampling, surveys and statistics in employment litigation.

4.      Detailed biographical information is attached at Exhibit 1.  I lead the Economic Consulting Practice at Claro, and I have been engaged in a number of matters involving labor and employment issues. Prior to joining Claro, I worked for Micronomics, Inc. and Deloitte & Touche, LLC performing similar duties as I am for Claro.  I have been designated as an expert witness and testified at trial and in deposition as an expert witness in several cases in state and federal district courts in California, Florida, Illinois, Louisiana, Minnesota, and New Jersey.  I have been retained as an expert in approximately 70 cases in state and federal courts in California, Florida, Illinois, Louisiana, Minnesota, New Jersey, New York, and Oregon.

5.      I have extensive experience working with the collection, organization, and analysis of complex data throughout my 20-year academic and professional career.  I am often

asked by clients to organize and analyze databases containing millions, and sometimes billions, of items of information.

## II.    NATURE OF ASSIGNMENT

6.    Plaintiffs allege that Defendant has a policy and practice of failing to pay its over-the-road ("OTR") drivers for all wages owed.  To that end, I have been retained by counsel for Scott Nance and Frederick Freedman (herein "Nance", "Freedman" or "Plaintiffs") to review certain and data to determine whether these data could be used to calculate hours worked, average wage, and potentially unpaid wages if it is determined that Defendant violated the law.  I was asked to make those calculations for Nance and Freedman under various assumptions regarding the compensability of their time.  As part of my assignment, I was asked to determine if potential statutory penalties could be calculated.  I was also asked to opine on whether these calculations could be performed for the remaining putative class members if similar data is made available.

## III.    MATERIALS REVIEWED

7.    I have been provided by counsel for Plaintiffs documents which include, among other things, the *Class Action – Second Amended Complaint*, *May Trucking Company's Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint*, *Deposition of Scott Smith*, *May Trucking Company Driver Reference Manual* excerpts, Driver Logs and Payroll Data for Plaintiffs, and sample Driver Logs and Payroll Data for an unidentified collection of employees.  A full list of the documents I reviewed is attached at Exhibit 2.

## IV.    DESCRIPTION OF DATA

8.    Counsel for Plaintiffs provided two sources of data for Plaintiffs which were produced by Defendant: "Driver Logs" and "Drivers Payroll Recap Reprints" ("Payroll Data").

9.    The Driver Logs provide details as to the activities, timing, and locations of the drivers on a daily basis.  I have attached an example of the Driver Logs as Exhibit 3.  One log is generated for each day that a driver is engaged in activity, and it accounts for all 24 hours

in that day.  Along with summary information, each entry in a Driver Log contains a time stamp, duration, activity name, and approximate location, as well as a correction indicator and comment where applicable.  The activities recorded in the Driver Logs include: "Driving", "On-Duty", "Off-Duty" and "Sleeper".

10.    The second source of data, "Drivers Payroll Recap Reprints" contains detailed information regarding the pay received by Plaintiffs.  I have attached an example of the Drivers Payroll Recap Reprint as Exhibit 4.  These pay summaries are generated on a weekly basis.  The pay week for regular drivers ends on Tuesday at midnight, and the pay week for trainees ends on Saturday at midnight. It is my understanding that drivers are paid for trips in the current pay period only if the appropriate paperwork is submitted by Tuesday midnight.  Otherwise, the trip will be paid in the following pay period.

11.    There appear to be four main categories of compensation: trip pay, hourly or activity based pay, student or ELD pay, and expense reimbursements:

    i.    "TRIP PAY" is calculated at a rate of $0.30 per mile.  It is my understanding that the mileage for the trips is calculated by Defendant's internal geographic information system (GIS).  The mileage is not directly related to the actual miles driven; adjustments can be made if deviations occur.

    ii.    Hourly or activity based pay are designated with codes "XTRA PICK/DROP" or "HOURLY PAY" or "ADD PAY".  Hourly pay for Plaintiffs is paid at $10.50 per hour; Plaintiffs are compensated $15.00 per extra pickup/drop-off.

    iii.    While Plaintiffs were in training, their pay was listed with the pay code "STUDENT PAY" or "ELD PAY".  During this period, Plaintiffs were paid a flat rate of $50 or $60 per day.

    iv.    Reimbursements or deductions may be accompanied by a code, a unit number, an order number, date, details about the

– 3 –

reimbursement or deduction, and the amount.  The following codes appear in the payroll recaps for Freedman and Nance:  ADV 03, MISC 01, ADV 01, REPR 01, TOLL 01, LMPR 01, MISC 35, and OIL 01.  A unit or order number may also be associated with the reimbursement or expense.  It is my understanding that the date shown is the date on the receipt or when the expense was incurred.

## V.  SUMMARY OF CONCLUSIONS

12.  I reviewed the data produced by Defendant and was able to track the hours spent by Freedman and Nance in various activities.  Under certain assumptions regarding the work status of these activities and whether certain amounts of sleeper berth time are compensable, I can determine:

     i.    during their training periods, Defendant failed to pay Plaintiffs at the appropriate minimum wage for time spent as student drivers;[1] if Oregon minimum wage law applies, plaintiffs are owed $3,035.04; alternatively if Federal minimum wage law applies, plaintiffs are owed $2,143.37;

    ii.    Defendant made deductions from Plaintiffs' pay for idle time, in the amount of $15.99; and

    iii.    Plaintiffs would be entitled to additional statutory penalties for Defendant's failure to comply with the appropriate state laws, which could be calculated without difficulty based on the principal damages analysis.

13.  A summary of these damages are contained in Exhibit 5.

---

[1] I understand Plaintiffs also have a claim for time worked during orientation sessions at Defendant's offices prior to beginning their student driving work.  I have not been asked to provide an opinion regarding the damages for time worked during the orientation portion of the training.

14.     After performing the analyses for Plaintiffs, I believe it would be feasible to perform the same types of calculations for the rest of the putative class if similar data were provided to me.

## VI.    DISCUSSION

### A.  Data Processing

15.     I have been asked by Counsel to identify and quantify the amounts of time spent by Plaintiffs in various activities.  The Driver Logs provided by Defendant can be used to determine at least three characteristics regarding the use of Plaintiffs time: 1) the activity classification, 2) whether the truck moves during the activity, and 3) the location of the truck.

16.     The activity of the driver is listed directly in the driver logs.  It is my understanding that these logs are kept to comply with Federal Hours-of-Service Regulations. The categories tracked in the driver logs are: Driving, On-Duty, Off-Duty, and Sleeper.

17.     I have determined that a truck is in motion for an activity if the subsequent location lists a different city from the current activity.  If the same city is listed in the subsequent location, I designated the truck in motion if the implied speed (i.e., distance divided by duration) was greater than 25 miles per hour.  I also classify a truck in motion if the activity is "driving".

18.     The assignment of characteristics creates eight mutually exclusive categories for each Plaintiff's time.  I can use these categories to determine hours worked based on whether an activity, movement, and location combination is determined to constitute on-duty (compensable) time.  Exhibit 6 presents a total summary of the time for both Plaintiffs for all eight categories.

### B.  Matching of Pay Data to Driver Logs

19.     In order to determine average wage, it is necessary to assign the various components of pay to a day or range of dates.  Pay for trips and hourly pay are not necessarily paid in the adjacent time period.  I understand that the timing of pay is determined by when the appropriate paperwork is submitted by the driver.  I used the dispatch dates and Drivers Logs to reconstruct pay based on when the wages are earned, rather than paid.

20.     For multi-day trips, payments are allocated across the days of the trip on a *pro rata* basis.  In order to estimate the portion of the amount paid to be allocated for each day, I cross reference the daily driver logs and the weekly payroll reprints to see how many daily miles were driven and the number of miles that were paid for the actual trip.  The trip pay was divided among the trip days based on the proportion of miles driven as indicated in the Drivers Log.

21.     For example, I examined the trip driven by Frederick Freedman from May 9, 2011 to May 11, 2011, see Exhibit 4.  Frederick Freedman was off-duty on May 9.  On May 10, 485 miles were driven according to the Driver Log.  On May 11, 364 miles were driven according to the Driver Log.  Therefore, 57.1% of the total miles on the trip were driven on May 10 and the remaining 42.9% miles were driven on May 11.  The Drivers Payroll Recap Report for 5/19/11 shows pay for the May 9 to May 11 trip at $220.20.  I allocated 57.1% of the pay, or $125.73, to May 10, 2011, and the remaining 42.9%, or $94.27, to May 11, 2011.  I then aggregated those days into the appropriate pay weeks, i.e., week ending May 10, 2011 and week ending May 16, 2011.

## VII.    Calculation of Damages

22.     Counsel has asked me to perform most of the calculations by counting all time while wheels are moving or when Plaintiffs are on-duty as working hours.

### 1.    Minimum Wage Violations – Training

23.     Defendant compensated trainees at a rate of $50 or $60 per day for participating in the ELD Program.  Based on the FLSA minimum wage of $7.25 per hour, a trainee would receive an average wage less than the minimum wage if he worked more than 6.9 hours in a day.    Based on the 2011 Oregon minimum wage of $8.50 per hour, a trainee would be compensated at an average wage below minimum wage if the employee worked more than 5.9 hours in a day.

24.     I calculated the total hours worked on a weekly basis by Plaintiffs.  I then calculated the minimum wage compensation for each week using the appropriate Oregon minimum wage and the Federal minimum wage. I calculated underpaid wages by subtracting the

ELD compensation from each of the Oregon and Federal minimum wage compensation. Under Oregon minimum wage law, Nance was underpaid $801.68 if all time in motion or on-duty is compensable. Alternatively, under Federal minimum wage law, Nance was underpaid $520.45 if all time in motion or on-duty is compensable. Similarly, under Oregon minimum wage law, Freedman was underpaid $2,233.36 if all time in motion or on-duty is compensable. Under Federal minimum wage law, Freedman was underpaid $1,622.92 if all time in motion or on-duty is compensable. Exhibit 7 sets forth the weekly summary of hours worked, compensation paid, and additional compensation owed to bring the wage up to the appropriate minimum wage.

2.     **Illegal Deductions**

25.     The second category of damages alleged by Plaintiffs is illegal deductions from Plaintiff's pay for idle time. The pay statements provide detail regarding the reimbursements and deductions made to Plaintiffs' pay. A common deduction found in the pay statements referred to deductions for Oregon Worker's Benefit Fund. Other than the Oregon Worker's Benefit Fund deductions, there were 14 reimbursements or deductions. Five reimbursement amounts and dates appear to exactly offset five expense amounts and dates. Four reimbursements or deductions do not appear as offsets. A summary of these reimbursements and deductions are shown in Exhibit 8.

26.     Of these four unmatched deductions, two have a description of "ADDL IDLE PURC". It is our understanding that Defendant's deducted these amounts from Plaintiffs' pay if the driver idled the truck beyond a specified amount of time. On two instances, idle penalties were deducted from Freedman's pay, totaling $15.99.

3.     **Wage and Hour Penalties**

27.     I understand that Plaintiffs are also alleging claims for various statutory penalties. A calculation of penalties is not part of my current analysis for purposes of class certification. However, once the underlying damages have been determined, the amount of damages due should be easy to calculate.

**VIII.    Feasibility of Class-wide Calculations**

28.    If I was provided the same type of information, I would be able to perform the same analyses for all remaining putative class members in an efficient manner.  Based on the fact that Defendant has provided the necessary data for Frederick Freedman and Scott Nance, I would expect that similar data is available for each employee in the class.  Thus, for each employee in the class, I would need to receive the following information and then perform the following steps:

29.    I received the driver logs as scanned PDF documents.  The process for converting these scanned documents into electronic data can be achieved electronically through optical character recognition ("OCR") software or manually through data entry.  Given the quality of the scans, I would probably recommend a manual data entry process for the remaining class members.

30.    We have used on multiple occasions an off-shore data entry company to perform mass data entry tasks.  The cost of using this method to do the data entry is 80 to 90 percent less expensive than performing it locally.  Previous costs on similar projects run from $0.50 to $1.25 per page entered.  The cost depends on the number of characters entered per page.  Also, accuracy rates of greater than 99 percent can be achieved.

31.    I received the Payroll Data as plain text files.  If I was to receive the Payroll Data in the same format, I would use the same computer code that I have already written to process Plaintiffs' Payroll Data.  This task could be completed quickly.

32.    The amount of time necessary to complete the analysis for the putative class would depend on the number of class members and volume of available data.  As a conservative estimate, I believe the analysis could be completed within three months (if not less) from the time the data is produced.

## V.    SUMMARY OF CONCLUSIONS

33.    I reviewed the data produced by Defendant and was able to track the hours spent by Freedman and Nance in various activities.  Under certain assumptions regarding the work status of these activities, I can determine:

      i.     during their training periods, Defendant failed to pay Plaintiffs at the appropriate minimum wage for time spent as student drivers; if Oregon minimum wage law applies, plaintiffs are owed $3,035.04; alternatively if Federal minimum wage law applies, plaintiffs are owed $2,143.37;

      ii.     defendant made deductions from Plaintiffs' pay for idle time, in the amount of $15.99; and

      iii.     Plaintiffs would be entitled to additional statutory penalties for Defendant's failure to comply with the appropriate state laws, which could be calculated without difficulty based on the principal damages analysis.

34.    A summary of these damages are contained in Exhibit 5.

35.    After performing the analyses for Plaintiffs, I believe it would be feasible to perform the same types of calculations for the rest of the putative class if similar data were provided to me.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

      Executed on March 11, 2013 at Los Angeles, California.

Joseph A. Krock, Ph.D

# NANCE v. MAY TRUCKING

# EXHIBIT 1



**Joseph A. Krock, Ph.D.**
Director

**The Claro Group, LLC**
777 South Figueroa Street
Suite 4050
Los Angeles, CA 90017

Tel    213-784-3079
Cell   310-213-7776
Fax    213-452-6556
jkrock@theclarogroup.com

**EDUCATION**
Ph.D., Economics
    University of Chicago

M.A., Economics
    University of Chicago

B.A., Economics-Mathematics
    University of California, Santa
    Barbara, with Honors

Dr. Krock is a Director with The Claro Group and heads the Economic Consulting Practice.  He is among the country's leading experts in wage and hour class action litigation and has been retained by numerous clients in nationwide class and collective actions.  Additionally, he provides consulting and expert witness testimony services for antitrust, breach of contract, and complex commercial litigation matters.  Dr. Krock provides economic and statistical analyses, including econometrics, risk analysis, and sampling and survey design.

As an expert economic and statistical witness, Dr. Krock has testified at trial and deposition in matters pending before the U.S. District Courts in California, Illinois, and New Jersey, the Superior Court of the State of California, the Circuit Court of Florida and the Civil District Court of Louisiana.  He also participates in private arbitration and mediation matters, and assists clients with corporate decision-making.

In his wage and hour practice, Dr. Krock regularly provides economic examination including the review and evaluation of employment data and estimates on liability exposure.  He designs, executes, and analyzes samples and surveys; reviews, verifies, and tabulates claims information; and provides expert testimony.  Additionally, Dr. Krock supports labor and employment class action litigation and general commercial litigation by collecting, managing, and analyzing complex data.

A recognized expert in sports economics, Dr. Krock conducts extensive investigations of the factors that determine stadium values in various sports, along with related issues affecting the overall value of sports franchises.  His doctoral thesis analyzed factors that influence the prices of public golf services in the Chicago area.  His work has provided valuable information for determining golf course pricing, quality, difficulty, location decisions, and consumer valuation of golf services.

Prior to joining The Claro Group, Dr. Krock held senior positions at Micronomics, Inc. and Deloitte & Touche.

**Fields of Concentration**

- Labor and Employment, Antitrust, Damages Calculation, Econometrics, Statistical Analysis, Surveys and Sampling, Valuation, Risk Analysis, Complex Data Management and Analysis

**Selected Consulting Experience**

**Economic Damages/Lost Profits**

- Commercial Litigation - Calculated lost profits and economic damages on behalf of plaintiffs and defendants in connection with contract disputes, fraud, business interruption, and other causes of action.  Addressed lost sales, incremental costs, capacity, and mitigation.

- Real Estate - Valued real estate and other assets lost as a result of wrongful conduct.

- Wrongful Death - Calculated lost wages and benefits in connection with wrongful death and personal injury matters.

- Determined lost sales and lost profits as a result of alleged wrongful conduct and breach of contract.

**Econometrics**

- Antitrust - Performed econometric analysis of antitrust pass-through damages in connection with indirect purchaser antitrust matter.



- Labor Class Actions - Analyzed differences among groups of potential class members in labor and employment matters using econometric and statistical techniques.
- Pharmaceutical Industry - Estimated own- and cross-price elasticity of demand for pharmaceuticals.
- Discrimination - Reviewed data and prepared an econometric analysis of government agricultural lending practices for a lending discrimination matter.
- Employed event study methodology in connection with securities fraud, intellectual property, and breach of contract matters.
- Prepared and evaluated revenue and earnings forecasts on behalf of plaintiffs and defendants involved in commercial litigation.
- Assisted clients with survey design, sampling, and hypothesis testing.

**Labor and Employment**

- Retained as economic and statistical expert for state and federal labor and employment cases.
- Developed and implemented sampling strategies for large state and federal wage and hour class actions.
- Assisted counsel in creating interview and deposition scripts regarding labor and employment issues.
- Managed large employment-related databases and determined class eligibility for numerous state and federal labor and employment class actions.
- Performed statistical and econometric analyses related to labor and employment issues.
- Assessed past and ongoing exposure regarding potential wage and hour issues to assist executives in corporate decision-making.

**Valuation**

- Sports - Developed model for valuing NFL franchises and studied impact of stadium construction and naming rights on franchise value.
- Insolvency - Analyzed value of a proposed reorganized entity seeking to emerge from Chapter 11 bankruptcy.
- Determined actual and but-for market capitalization in connection with wrongful conduct and breach of contract matters.
- Performed option valuation calculations in connection with wrongful conduct and breach of contract matters.
- Valued commercial real estate in connection with wrongful conduct matters.

**Antitrust**

- Prepared econometric analyses in direct purchaser and indirect purchaser price fixing antitrust matters.
- Conducted studies of market definition, below-cost pricing, price discrimination, and economic damages on behalf of plaintiffs and defendants involved with antitrust litigation.

**Risk Analysis**

- Assisted law firms, corporate legal departments, and mediators with assessments of litigation risk and the expected value of litigation.
- Analyzed risk associated with litigation versus settlement in insurance claim disputes on behalf of insurers and insured parties.


THE CLARO GROUP
CLARITY • VALUE • INTEGRITY®

**Healthcare**

- Performed billing review for a regional hospital to assess potential exposure for Medicare billing non-compliance issues.
- Built comprehensive Medicare billing database to assist a client in the re-pricing of Medicare billings for services provided to correct for reimbursement rates under OPPS, APC, and the Physician Fee Schedule, which were incorrectly billed

**TESTIMONY/EXPERT REPORTS/MEDIATION**

1.  Lisa Garvey, et al., v. Kmart Corp.
    U.S. District Court, Northern District of California
    Case No. 11-2575
    Wage & Hour
    Report

2.  Shane Simmons, et al., v. Valspar Corp.
    U.S. District Court, District of Minnesota
    Case No. 10-3026 RHK/SER
    Wage & Hour
    Deposition, Report

3.  Emerita V. Chavez, et al., v. Angelica Textile Services, Inc.
    Superior Court of California, County of San Diego
    Case No. 37-2010-00086997-CU-OE-CTL
    Wage & Hour
    Deposition, Report

4.  Simon V. Garcia, et al., v. Gordon Trucking, Inc., et al.
    U.S. District Court, Eastern District of California – Fresno Division
    Case No. 1:10-cv-00324-OWW-SKO
    Wage & Hour
    Report

5.  Susan Gayle Holt, et al., v. K Mart Corporation
    Superior Court of California, County of San Francisco
    Case No. CGC-10-496141
    Wage & Hour
    Report

6.  Bay Point Oil Corp., et al., v. Motiva Enterprises LLC, et al.
    Hollywood Hills Servicecenter, Inc., et al., v. Motiva Enterprises LLC, et al.
    Circuit Court of Florida, County of Miami-Dade
    Case Nos. 03-03572 CA 30 and 04-13857 CA 30
    Antitrust
    Deposition

7.  William Dailey, et al., v. Sears, Roebuck and Co.
    Superior Court of California, County of San Diego
    Case No. 37-2009-00054168-CU-OE-NC
    Wage & Hour
    Report

8.  Edward Arciniega, v. D.R. Horton, Inc., et al.
    American Arbitration Association Case No. 72 160 00321 10
    Case No. 72 160 00321 10
    Wrongful Termination
    Arbitration, Deposition



9.  Richard B. Melbye, v. Accelerated Payment Technologies, Inc.
    U.S. District Court, Southern District of California
    No. 3:10-cv-IEG-JMA
    Breach of Contract
    Trial, Deposition, Report

10. Shaunetta Eddings, et al., v. Health Net, Inc., et al.
    U.S. District Court, Central District of California
    No. CV10-1744 JST
    Wage & Hour
    Deposition, Report

11. Jose Jimenez, v. Sears, Roebuck & Co
    Superior Court of California, County of Los Angeles
    Case No. BC 383006
    Wage & Hour
    Deposition, Report

12. Spencer De La Cruz, v. Abercrombie & Fitch Co., et al.
    Superior Court of California, County of Orange
    Case No. 30-2007-00036240
    Wage & Hour
    Deposition, Report

13. Clarke and Rebecca Wixon, et al., v. Wyndham Resort Development Corp., et al.
    U.S. District Court, Northern District of California
    No. C 07-02361 JSW
    Breach of Contract
    Report

14. Maisah Muhammad, et al., v. Bare Escentuals, Inc.
    Superior Court of California, County of Los Angeles
    Case No. BC 405569
    Wage & Hour
    Deposition, Report

15. Kim McBride, et al., v. Jenny Craig, Inc., et al.
    U.S. District Court, Southern District of California
    No. 07CV2382 JLS (AJB)
    Wage & Hour
    Report

16. Hans J. Rapold, v. Baxter International, Inc.
    U.S. District Court, Northern District of Illinois
    No. 08CV7369
    Breach of Contract
    Report

17. Daynna Wood, et al., v. Vie-Del Company
    Superior Court of California, County of Fresno
    Case No. 08CECG01289
    Wage & Hour
    Report



18. Thomas La Parne, et al., v. Monex Deposit Company, et al.
    U.S. District Court, Central District of California
    No. SACV-08-302 DOC (MLGx)
    Wage & Hour
    Deposition, Report

19. The Administrators of the Tulane Educational Fund v. Marsh USA, Inc., et al.
    Civil District Court For The Parish of Orleans, State of Louisiana
    Case No. 2006-09555
    Insurance Dispute
    Deposition, Report

20. Allison L. Knox v. Dynamic Nursing Services, Inc.
    Superior Court of California, County of Los Angeles
    Case No. BC 360621
    Wage & Hour
    Trial, Report

21. Judith A. Smith v. IHOP Corp.
    Superior Court of California, County of Los Angeles
    Case No. BC 382940
    Age Discrimination
    Report

22. Bich D. Nguyen v. Computer Sciences Corporation, et al.
    Superior Court of California, County of Los Angeles
    Case No. BC 358617
    Age Discrimination
    Deposition

23. Equilon Enterprises LLC v. Nikrad Enterprises, Inc.
    U.S. District Court, Central District of California
    No. CV-07-2562 ABC
    Antitrust, Breach of Contract
    Report

24. Ruben Pablo, et al., v. ServiceMaster Global Holdings, Inc., et al.
    U.S. District Court, Northern District of California
    No. 3:08-CV-03894
    Wage & Hour
    Report

25. Holly Walker, Carol Paradise, et al., v. Bankers Life & Casualty Co.
    U.S. District Court, Northern District of Illinois
    No. CV 06906
    Wage & Hour
    Deposition, Report

26. Cynthia Fernandez, et al., v. Victoria's Secret Stores, Inc.
    U.S. District Court, Central District of California
    No. CV 06-4149 MMM (SHx)
    Wage & Hour
    Report



27.  In re Terminix Employment Practices Litigation
     U.S. District Court, Northern District of California
     MDL Docket No. 1809
     Wage & Hour
     Report, Mediation

28.  Shiloh Hood, et al., v. Terminix International Co., L.P.
     Superior Court of California, County of Alameda
     Case No. RG 05245029
     Wage & Hour
     Report, Mediation

29.  Christopher Roy, et al., v. Terminix International Co., L.P.
     Superior Court of California, County of San Bernardino
     Case No. SCVSS 140622
     Wage & Hour
     Report, Mediation

30.  Derain Clark, Maxine Gaines, et al., v. American Residential Services, L.L.C.
     Superior Court of California, County of Los Angeles
     Case No. BC 332632
     Wage & Hour
     Report, Mediation

31.  Janice Millius, et al., v. Los Angeles Unified School District
     Superior Court of California, County of Los Angeles
     Case No. BC 325763
     Wage & Hour
     Mediation

32.  Ortho-McNeil Pharmaceutical Inc., et al., v. Barr Laboratories, Inc.
     U.S. District Court, District of New Jersey
     No. 2:03-CV-04678-SRC-CCC
     Patent Infringement
     Deposition, Report

33.  Micrel, Inc., v. Deloitte & Touch, L.L.P.
     Superior Court of California, County of Santa Clara
     Case No. 1-03-CV-816477
     Professional Negligence
     Deposition, Report

34.  In re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation
     U.S. District Court, District of Oregon
     MDL Docket No. 1439
     Wage & Hour
     Report

35.  Paula Chase, et al., v. Farmers Insurance Exchange, et al.
     District Court of Colorado, City and County of Denver
     Case No. 01CV4773
     Wage & Hour
     Report


THE CLARO GROUP
CLARITY • VALUE • INTEGRITY ®

36.  Mark Severn, et al., v. Farmers Insurance Exchange, et al.
     Circuit Court of Michigan, County of Oakland
     Case No. 2001-035558-CZ
     Wage & Hour
     Report

37.  Gary J. Milner, et al., v. Farmers Insurance Exchange, et al.
     District Court of Minnesota, County of Hennepin
     Case No. 01-15004
     Wage & Hour
     Report

38.  Robert Salcido, et al., v. Farmers Insurance Exchange, et al.
     District Court of New Mexico, County of Albuquerque
     Case No. 202-CV-200106330
     Wage & Hour
     Report

39.  Robert C. Westcott, et al., v. Farmers Insurance Exchange
     U.S. District Court, District of Oregon
     No. 3:01-1105
     Wage & Hour
     Report

40.  Robert B. Dietz, et al., v. Farmers Insurance Exchange Co., Inc.
     Superior Court of Washington, County of Snohomish
     Case No. 01-2-07091-4
     Wage & Hour
     Report

41.  Jennifer Petre v. Farmers Insurance Exchange, et al.
     Superior Court of Washington, County of King
     Case No. 01-2-21799-2
     Wage & Hour
     Report

42.  Rose M. Bell, et al., v. Farmers Insurance Exchange
     Superior Court of California, County of Alameda
     Case No. 774013-0
     Wage & Hour
     Report, Mediation

43.  Guadalupe L. Garcia, Jr., et al., v. Ann Veneman
     U.S. District Court, District of Columbia
     No. 1:00CV02945
     Lending Discrimination
     Report

44.  Raymond Verdin, et al., v. R&B Falcon Drilling USA, Inc., et al.
     U.S. District Court, Southern District of Texas
     No. G-00-488
     Antitrust
     Report



THE CLARO GROUP
CLARITY • VALUE • INTEGRITY ®

45. Inter-Tel, Inc., v. Bank of America
Superior Court of Arizona, County of Maricopa
Case No. CV 96-00867
Breach of Contract, Wrongful Conduct
Arbitration

**PUBLICATIONS & PRESENTATIONS**

- "New Rules for the Use of Statistical Evidence in Wage & Hour Cases,", MCLE Presentation, Bridgeport Continuing Education Conference on Wage & Hour Litigation, San Diego, California, June 15, 2012.

- "Damage Modeling in Wage and Hour Class Actions Including Lost Income & PAGA Penalties," (with Fraser A. McAlpine, Hunton & Williams), MCLE Presentation, Bridgeport Continuing Education Conference on Wage & Hour Litigation, San Francisco, California, October 14, 2011.

- "Damage Modeling in Wage and Hour Class Actions," (with Daniel Chammas, Venable, and Steven Pearl, The Pearl Law Firm), MCLE Presentation, Bridgeport Continuing Education Conference on Wage & Hour Litigation, Los Angeles, California, December 16, 2010.

- "Calculating Damages at Class Certification: Effect of New Class Certification Standards on Calculation of Damages," (with Miranda Kolbe, Schubert Jonckheer & Kolbe), MCLE Presentation, Bridgeport Continuing Education Conference on Class Action Litigation, San Francisco, California, August 13, 2010.

- "Approaches to Calculating, Proving and Arguing Monetary Relief," (with T. Blood, Blood Hurst & O'Reardon, and G. Knopp, Akin Gump), MCLE Presentation, Bridgeport Continuing Education Conference on Class Action Litigation, Los Angeles, California, April 23, 2010.

- "Approaches to Calculating, Proving and Arguing Damages," (with D. Barclay Edmundson, Orrick), MCLE Presentation, Bridgeport Continuing Education Conference on Class Action Litigation, Los Angeles, California, April 30, 2009.

- "Effective Use of Experts in Employment Litigation," MCLE Presentation, Bridgeport Continuing Education Conference on Trial Preparation for Employment Litigation, San Diego, California, January 28, 2009.

- "Approaches to Calculating and Proving Damages," MCLE Presentation, Bridgeport Continuing Education Conference on Wage & Hour Litigation, Los Angeles, California, December 3, 2008.

- "Approaches to Calculating and Proving Damages," MCLE Presentation, Bridgeport Continuing Education Conference on Wage & Hour Litigation, San Diego, California, June 13, 2008.

- "Working With Experts: The SET Approach," (with Gary Holmen, Farmers Insurance), ACC Docket, May 2008.

- "Efficient Management of Data in Class Action Litigation," (with Jean Nicole Taylor Moore, Micronomics), California Litigation, Volume 21, Number 1, 2008.

- "Efficient Management of Data in Wage & Hour Class Actions," MCLE Presentation, Bridgeport Continuing Education Conference on Wage & Hour Litigation, Sacramento, California, March 6, 2008.

- "Managing Experts," MCLE Presentation, TroyGould, Los Angeles, California, February 28, 2008.

- "Sampling Class Action," (with Stevan Porter, Micronomics), The Los Angeles Daily Journal, January 7, 2008.



- "Statistics: Sampling, Descriptive Statistics and Regression," (with Stevan Porter), MCLE Presentation, Davis Wright Tremaine, Los Angeles, California, September 19, 2007.

- "Efficient Discovery and Management of Data in Wage and Hour Litigation," (with Karen Santos, Micronomics), MCLE Presentation, The Quisenberry Law Firm, Los Angeles, California, July 10, 2007.

**AFFILIATIONS**

- American Economics Association, Member

- National Association of Business Economists, Member

- American Bar Association, Associate Member

- Los Angeles County Bar Association, Associate Member

  Litigation Section, Labor and Employment Section

- Loyola High School – Alumni Association

- St. Lawrence Martyr Parish Finance Council, Chairman

# NANCE v. MAY TRUCKING

# EXHIBIT 2

**NANCE vs. MAY TRUCKING**
**LIST OF MATERIALS REVIEWED**

| Legal Files and Documents - Descriptions | File Name | Bates No. |
|---|---|---|
| 1. Class Action, Second Amended Complaint, Filed 11/13/12 | 2nd Am Complaint Conformed.pdf | Page ID#: 437-62 |
| 2. May Trucking Company's Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint, Filed 11/30/12 | Answer to 2AC.pdf | Page ID#: 463-81 |
| 3. Letter from Scopelitis to Patterson Law Group Regarding Request for Documents, Dated 5/29/12 | May Trucking Ltr frm Scopelitis 6-29-12.pdf | N/A |
| 4. Deposition of Scott Smith, Dated 1/18/12 | Smith, Scott 1-18-2012.pdf | N/A |
| 5. May Trucking Company Driver Reference Manual Excerpts | Driver Reference Manual Excerpts.pdf | MT0000002-5, 57-101, 124-125, 136-137, 141-144, 312-314, 341-348, 366-413, 436-437 |

**Electronic Files**

| | | |
|---|---|---|
| 6. Driver Logs of Frederick Freedman from 2/9/11 to 7/5/11 | Freedman HOS Logs.pdf | N/A |
| 7. Driver Logs of Scott Nance from 8/31/10 to 10/25/10 | Nance HOS Logs.pdf | N/A |
| 8. Driver Logs of Scott Nance from 8/31/10 to 10/25/10, Text Format | Nance HOS Logs.txt | N/A |
| 9. Payroll Statement for Frederick Freedman for the Week Ending 6/16/11 | MT0018172_QSYSPRT595194.txt | N/A |
| 10. Payroll Statement for Frederick Freedman for the Week Ending 6/9/11 | MT0018173_QSYSPRT595194 (2).txt | N/A |
| 11. Payroll Statement for Frederick Freedman for the Week Ending 6/2/11 | MT0018174_QSYSPRT595194 (1).txt | N/A |
| 12. Payroll Statement for Frederick Freedman for the Week Ending 5/26/11 | MT0018175_QSYSPRT595194 (3).txt | N/A |
| 13. Payroll Statement for Frederick Freedman for the Week Ending 5/19/11 | MT0018176_QSYSPRT595194 (4).txt | N/A |
| 14. Payroll Statement for Frederick Freedman for the Week Ending 5/12/11 | MT0018177_QSYSPRT595194 (5).txt | N/A |
| 15. Payroll Statement for Frederick Freedman for the Week Ending 5/5/11 | MT0018178_QSYSPRT595194 (6).txt | N/A |
| 16. Payroll Statement for Frederick Freedman for the Week Ending 4/21/11 | MT0018179_QSYSPRT595194 (7).txt | N/A |
| 17. Payroll Statement for Frederick Freedman for the Week Ending 4/14/11 | MT0018180_QSYSPRT595194 (8).txt | N/A |
| 18. Payroll Statement for Frederick Freedman for the Week Ending 4/7/11 | MT0018181_QSYSPRT595194 (9).txt | N/A |
| 19. Payroll Statement for Frederick Freedman for the Week Ending 3/31/11 | MT0018182_QSYSPRT595194 (10).txt | N/A |
| 20. Payroll Statement for Frederick Freedman for the Week Ending 3/24/11 | MT0018183_QSYSPRT595194 (11).txt | N/A |
| 21. Payroll Statement for Frederick Freedman for the Week Ending 3/17/11 | MT0018184_QSYSPRT595194 (12).txt | N/A |
| 22. Payroll Statement for Frederick Freedman for the Week Ending 3/10/11 | MT0018185_QSYSPRT595194 (13).txt | N/A |
| 23. Payroll Statement for Scott Nance for the Week Ending 10/14/10 | MT0018186_QSYSPRT595194 (1).txt | N/A |
| 24. Payroll Statement for Scott Nance for the Week Ending 10/7/10 | MT0018187_QSYSPRT595194 (2).txt | N/A |
| 25. Payroll Statement for Scott Nance for the Week Ending 9/23/10 | MT0018188_QSYSPRT595194 (3).txt | N/A |
| 26. Payroll Statement for Scott Nance for the Week Ending 9/16/10 | MT0018189_QSYSPRT595194 (4).txt | N/A |
| 27. Payroll Statement for Scott Nance for the Week Ending 9/9/10 | MT0018190_QSYSPRT595194 (5).txt | N/A |
| 28. Payroll Statement for Scott Nance for the Week Ending 10/28/10 | MT0018191_QSYSPRT595194 (6).txt | N/A |

**CD Files**

| | | |
|---|---|---|
| 29. Contains folders labeled E1-E70 and R1-135. Each folder contains text files for an employee E1-E70 and 1-135 respectively with weekly payroll statements, total of 205 folders | \01\Payroll | N/A |
| 30. Contains text files with travel log data for various employees and various dates (most likely for Entry Level Drivers due to folder name), total of 35 text files | \02\Logs\ELD | N/A |
| 31. Contains text files with travel log data for various employees and dates (most likely for Regular Drivers due to folder name), total of 311 text files | \02\Logs\Regular | N/A |
| 32. Contains movement reports for various employees and dates, total of 144 text files | \03\Movement | N/A |
| 33. Contains contact records for various employees and dates, total of 140 text files | \04\Contact | N/A |
| 34. Driver Movement Report for Scott Nance from 021407 through 060112 | \05\Nance\01 Movement\NANSM.txt | N/A |
| 35. Contact records for Scott Nance | \05\Nance\02 Contact\NANS.txt | N/A |
| 36. Driver Movement Report for Frederick Freedman from 021407 through 060112 | \06\Freedman\01 Movement\FREFM.txt | N/A |
| 37. Contact records for Frederick Freedman | \06\Freedman\02 Contact\FREF.txt | N/A |

# NANCE v. MAY TRUCKING

# EXHIBIT 3

# Driver Log

**FREDERICK FREEDMAN**
(8 day cycle)

Carrier:
May Trucking

Main Office:
4185 Brooklake Rd
Salem, OR
97303

Depot Location:
Phoenix, AZ

**5/10/2011**    Start of Day: Midnight Pacific

Document(s):
Trailer(s):
Tractor(s): 4522
Co-Driver(s):
Edits: 0
Sensor Failures: 0

Off Duty: 7h48
Sleeper Berth: 5h38
Driving: 10h12
On Duty Not Driving: 0h22
Total Hours On Duty Today: 10h34
Total Hours On Duty for Week: 10h34
Distance Driven (mi): 485

| Start Time | Duration | Activity | Location | Flags* | Comments |
|---|---|---|---|---|---|
| 00:00 | 5h51 | Off-Duty | 8 mi SSW of Phoenix, AZ | C | |
| 05:51 | 0h02 | On-Duty | 8 mi SSW of Phoenix, AZ | C | |
| 05:53 | 0h26 | Driving | 8 mi SSW of Phoenix, AZ | C | |
| 06:19 | 0h59 | Off-Duty | 5 mi ENE of Avondale, AZ | C | |
| 07:18 | 0h15 | Driving | 5 mi ENE of Avondale, AZ | C | |
| 07:33 | 0h20 | On-Duty | 4 mi NE of Avondale, AZ | C | |
| 07:53 | 1h35 | Driving | 4 mi NE of Avondale, AZ | C | |
| 09:28 | 0h22 | Off-Duty | 23 mi SW of Camp Verde, AZ | C | |
| 09:50 | 4h45 | Driving | 23 mi SW of Camp Verde, AZ | C | |
| 14:35 | 2h47 | Driving | 58 mi SW of Blanding, UT | C | |
| 17:22 | 0h18 | Off-Duty | 13 mi SSE of Moab, UT | C | |
| 17:40 | 0h19 | Driving | 13 mi SSE of Moab, UT | C | |
| 17:59 | 0h18 | Off-Duty | 1 mi S of Moab, UT | C | |
| 18:17 | 0h05 | Driving | 1 mi S of Moab, UT | C | |
| 18:22 | 5h38 | Sleeper | 1 mi NNW of Moab, UT | C | |

Driver's Signature

* DST - Daylight Saving Time Transition
* (C)onfirmed, (E)dited, (S)ensor Failure, (D)istance Edit

Page 93 of 150

MT000000687

# NANCE v. MAY TRUCKING

# EXHIBIT 4

MT0018176_QSYSPRT595194 (4).txt - Notepad

File   Edit   Format   View   Help

```
 DATE:  9/04/12                                    MAY TRUCKING COMPANY                                           PYRP76A_D
 TIME: 16:45:03                              DRIVERS PAYROLL RECAP REPRINT                                        PAGE   1
                                                 CHECK DATED  5/19/11
------------------------------------------------------------------------------------------------------------------------
  RECORD #:    FREF
    EARNINGS:                                                                                                    NON
 DATE TO        ORDER    DISPATCH DISPATCH    EMPTY                              EMPTY  LOADED              TAXABLE    TAXABLE
  PAY    UNIT # NUMBER   NUMBER   DATE        DATE    TYPE OF PAY                MILES  MILES     RATE  EARNINGS   EARNINGS
--------------------------------------------------------------------------------------------------------------------------
 5/18/11    4522 0575326    01    5/09/11    5/11/11   TRIP PAY                    22    712    .30000   220.20        .00
 Tempe      AZ E Phoenix    AZ E Tolleson  AZ L Avon      CO
 BEGINNING HUB-           ENDING HUB-
 5/18/11    4522 0575395    01    5/11/11    5/13/11   TRIP PAY                   104    857    .30000   288.30        .00
 Avon       CO E Denver    CO L Payette   ID
 BEGINNING HUB-           ENDING HUB-  464528
 5/18/11    4522 0575330    02    5/14/11    5/16/11   TRIP PAY                          451    .30000   135.30        .00
 Payette    ID L Sumner    WA
 BEGINNING HUB-  464528   ENDING HUB-
                                                                          ------------------------------------------
                                                                           126    2020                 643.80        .00
                                                                                                     ----------------
          (L=Loaded,E=Empty,U=Unauthorized)                                          TOTAL GROSS PAY:      643.80
--------------------------------------------------------------------------------------------------------------------------
         TAXES:                                            FEDERAL:        71.67
                                                              EIC:          .00
                                                             FICA:        36.37
                                                            STATE:        17.38
                                                            LOCAL:          .00
                                                                       ---------
                                                            TOTAL:       125.42        TOTAL TAXES:       125.42-
--------------------------------------------------------------------------------------------------------------------------
 REIMBURSEMENTS:
 OIL  01    4522 0575326   5/10/11   OIL LUBE COOLA  0707498              10.92
                                                                       ---------
                                                                         10.92 TOTAL REIMBURSEMENTS:      10.92
--------------------------------------------------------------------------------------------------------------------------
     DEDUCTIONS:
 MISC 14                   5/18/11   OREGON WBF                            .56
                                                                       ---------
                                                                          .56        TOTAL CHARGES:          .56-
--------------------------------------------------------------------------------------------------------------------------
                                                                                        NET EARNED:       528.74
```

# NANCE v. MAY TRUCKING

# EXHIBIT 5

**NANCE v. MAY TRUCKING**
**SUMMARY OF DAMAGES**

| | Underpaid Wages | | Illegal |
| --- | --- | --- | --- |
| | FLSA Min Wage | OR Min Wage | Deductions |
| Freedman Training | $1,622.92 | $2,233.36 | $0.00 |
| Freedman Regular OTR | | | $15.99 |
| **Total Freedman:** | **$1,622.92** | **$2,233.36** | **$15.99** |
| Nance Training | $520.45 | $801.68 | $0.00 |
| Nance Regular OTR | | | |
| **Total Nance:** | **$520.45** | **$801.68** | **$0.00** |
| **Total Training:** | **$2,143.37** | **$3,035.04** | **$0.00** |
| **Total Regular OTR:** | **$0.00** | **$0.00** | **$15.99** |
| **Total Freedman and Nance:** | **$2,143.37** | **$3,035.04** | **$15.99** |

# NANCE v. MAY TRUCKING

# EXHIBIT 6

**NANCE v. MAY TRUCKING**
**WEEKLY SUMMARY OF HOURS BY ACTIVITY AND MOVING STATUS**

| Week Ending | Driving | | On-Duty | | Off-Duty | | Sleeper | | Total |
|---|---|---|---|---|---|---|---|---|---|
| | Moving | Non-Moving | Moving | Non-Moving | Moving | Non-Moving | Moving | Non-Moving | |
| **Nance:** | | | | | | | | | |
| 9/1/2010 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12.22 | 0.00 | 0.00 | **12.22** |
| 9/8/2010 | 47.35 | 0.13 | 0.13 | 1.37 | 5.02 | 38.52 | 26.20 | 49.28 | **168.00** |
| 9/15/2010 | 30.75 | 0.68 | 0.00 | 2.55 | 0.68 | 33.53 | 40.80 | 59.00 | **168.00** |
| 9/22/2010 | 0.00 | 0.00 | 0.00 | 0.02 | 0.00 | 167.98 | 0.00 | 0.00 | **168.00** |
| 9/29/2010 | 3.45 | 0.00 | 0.00 | 0.28 | 11.55 | 145.97 | 4.68 | 2.07 | **168.00** |
| 10/6/2010 | 11.35 | 0.00 | 0.00 | 2.18 | 0.00 | 56.93 | 49.92 | 23.62 | **144.00** |
| 10/13/2010 | 3.17 | 0.00 | 0.00 | 0.47 | 0.00 | 136.65 | 7.47 | 20.25 | **168.00** |
| **Total Nance:** | **96.07** | **0.82** | **0.13** | **6.87** | **17.25** | **591.80** | **129.07** | **154.22** | **996.22** |
| **Freedman:** | | | | | | | | | |
| 3/2/2011 | 17.68 | 0.00 | 0.00 | 0.70 | 8.72 | 18.02 | 18.73 | 8.15 | **72.00** |
| 3/9/2011 | 30.40 | 2.48 | 0.00 | 1.50 | 13.45 | 34.15 | 53.48 | 32.53 | **168.00** |
| 3/16/2011 | 25.43 | 3.50 | 0.00 | 1.60 | 3.63 | 18.40 | 65.23 | 50.20 | **168.00** |
| 3/23/2011 | 11.85 | 0.70 | 0.00 | 1.42 | 0.00 | 52.95 | 23.25 | 5.83 | **96.00** |
| 3/30/2011 | 32.97 | 2.30 | 0.00 | 0.80 | 20.50 | 4.57 | 75.62 | 31.25 | **168.00** |
| 4/6/2011 | 38.32 | 1.40 | 2.42 | 1.72 | 0.67 | 16.42 | 27.88 | 79.18 | **168.00** |
| **Total Freedman:** | **156.65** | **10.38** | **2.42** | **7.73** | **46.97** | **144.50** | **264.20** | **207.15** | **840.00** |

# NANCE v. MAY TRUCKING

# EXHIBIT 7

**NANCE v. MAY TRUCKING**
**WEEKLY SUMMARY OF DAMAGES**

| Week Ending | Actual Wages | Total Hours | Total Expected Wages | | Underpaid Wages | | Illegal Deductions |
|---|---|---|---|---|---|---|---|
| | | | FLSA Min Wage | OR Min Wage | FLSA Min Wage | OR Min Wage | |
| **Freedman Training** | | | | | | | |
| 3/5/2011 | $350.00 | 119.35 | $865.29 | $1,014.48 | $515.29 | $664.48 | $0.00 |
| 3/12/2011 | $350.00 | 81.50 | $590.88 | $692.75 | $240.88 | $342.75 | $0.00 |
| 3/19/2011 | $350.00 | 82.92 | $601.15 | $704.79 | $251.15 | $354.79 | $0.00 |
| 3/26/2011 | $350.00 | 85.10 | $616.98 | $723.35 | $266.98 | $373.35 | $0.00 |
| 4/2/2011 | $367.62 | 96.33 | $698.42 | $818.83 | $330.80 | $451.21 | $0.00 |
| 4/9/2011 | $150.00 | 23.15 | $167.84 | $196.78 | $17.84 | $46.78 | $0.00 |
| **Freedman Total:** | **$1,917.62** | **488.35** | **$3,540.54** | **$4,150.98** | **$1,622.92** | **$2,233.36** | **$0.00** |

| Week Ending | Actual Wages | Total Hours | Total Expected Wages | | Underpaid Wages | | Illegal Deductions |
| | | | FLSA Min Wage | OR Min Wage | FLSA Min Wage | OR Min Wage | |
|---|---|---|---|---|---|---|---|
| **Nance Training** | | | | | | | |
| 9/4/2010 | $200.00 | 43.45 | $315.01 | $364.98 | $115.01 | $164.98 | $0.00 |
| 9/11/2010 | $350.00 | 72.70 | $527.08 | $610.68 | $177.08 | $260.68 | $0.00 |
| 9/18/2010 | $250.00 | 39.53 | $286.62 | $332.08 | $36.62 | $82.08 | $0.00 |
| 9/25/2010 | $0.00 | - | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/2/2010 | $200.00 | 54.03 | $391.74 | $453.88 | $191.74 | $253.88 | $0.00 |
| 10/9/2010 | $300.00 | 40.48 | $293.50 | $340.06 | $0.00 | $40.06 | $0.00 |
| **Nance Total:** | **$1,300.00** | **250.20** | **$1,813.95** | **$2,101.68** | **$520.45** | **$801.68** | **$0.00** |
| **Total:** | **$3,217.62** | **738.55** | **$5,354.49** | **$6,252.66** | **$2,143.37** | **$3,035.04** | **$0.00** |

# NANCE v. MAY TRUCKING

# EXHIBIT 8

**NANCE V. MAY TRUCKING**
**SUMMARY OF REIMBURSEMENTS AND DEDUCTIONS**

| Name | Date | Reimbursement Code | Reimbursement or Deduction | Reimbursement Description | Amount |
|------|------|--------------------|-----------------------------|---------------------------|--------|
| 1. Nance | 9/16/2010 | ADV  03 | Deduction | COMCHECK ADVAN        560147428-100916-14444 | 165.00 |
| 2. Nance | 9/16/2010 | MISC 01 | Reimbursement | MISC            COST BUSS TICKET | 165.00 |
| 3. Freedman | 4/15/2011 | ADV  01 | Deduction | PAYROLL PROCES  0704819 550132089-110415-12190 | 17.31 |
| 4. Freedman | 4/15/2011 | REPR 01 | Reimbursement | REPAIR TRACTOR | 17.31 |
| 5. Freedman | 4/20/2011 | ADV  01 | Deduction | PAYROLL PROCES  0705345 600104014-110420-14164 | 203.10 |
| 6. Freedman | 4/22/2011 | REPR 01 | Reimbursement | REPAIR TRACTOR  0705345 | 203.10 |
| 7. Freedman | 4/25/2011 | ADV  01 | Deduction | PAYROLL PROCES  0705822 650058960-110425-10065 | 10.00 |
| 8. Freedman | 4/25/2011 | TOLL 01 | Reimbursement | TOLL | 10.00 |
| 9. Freedman | 5/18/2011 | ADV  01 | Deduction | PAYROLL PROCES  0708279 580009883-110518-04531 | 50.00 |
| 10. Freedman | 5/18/2011 | LMPR 01 | Reimbursement | LUMPER        0708279 | 50.00 |
| | | | **Unmatched Reimbursements/Deductions** | | |
| 11. Nance | 10/16/2010 | ADV  01 | Deduction | PAYROLL PROCES  0682949 560028480-101016-09325 | 18.57 |
| 12. Freedman | 4/20/2011 | MISC 35 | Deduction | ADDL IDLE PURC | 8.69 |
| 13. Freedman | 5/4/2011 | MISC 35 | Deduction | ADDL IDLE PURC | 7.30 |
| 14. Freedman | 5/10/2011 | OIL  01 | Reimbursement | OIL LUBE COOLA  0707498 | 10.92 |