IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT NANCE and FREDERICK
FREEDMAN, individuals on behalf of
themselves, all others similarly situated,
and the general public,

No. 03:12-cv-01655-HZ

OPINION & ORDER

                Plaintiffs,

    v.

MAY TRUCKING COMPANY, an Idaho
corporation, and DOES 1 through 100,

                Defendants.


Allison H. Goddard
James Patterson
Patterson Law Group, APC
402 West Broadway, 29th Floor
San Diego, CA 92101

Steve D. Larson
Jennifer S. Wagner
Stoll Stoll Berne Lokting & Shlachter
209 SW Oak Street, 5th Floor
Portland, OR 97204

      Attorneys for Plaintiffs

1 - OPINION & ORDER

Adam C. Smedstad
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
30 West Monroe Street, Suite 600
Chicago, IL 60603

James H. Hanson
Kelli M. Block
R. Jay Taylor, Jr.
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
10 West Market Street, Suite 1500
Indianapolis, IN 46204

Kim T. Buckley
Esler Stephens & Buckley
888 S.W. Fifth Avenue, Suite 700
Portland, OR 97204-2021

      Attorneys for Defendants

HERNANDEZ, District Judge:

Plaintiffs Scott Nance and Frederick Freedman are former employees of Defendant May Trucking Company. Plaintiffs allege claims for minimum wage violations, improper deduction of wages, and failure to pay wages upon termination. Plaintiffs sue on behalf of themselves and others similarly situated. Before the court is Plaintiffs' motion to certify its federal and state claims. Defendant also moves to strike the testimony of Plaintiffs' expert. Although Plaintiffs' claims present common questions, not all questions, particularly the claim for improper deductions, will likely result in a common answer for all potential class members. I grant in part and deny in part Plaintiffs' motion for class certification. I also deny Defendant's motion to strike the expert testimony.

## BACKGROUND

Plaintiffs Nance and Freedman were employed as over the road ("OTR") drivers for Defendant May Trucking. OTR drivers are on the road for several weeks at a time; and they typically live and sleep in their trucks. Defendant May Trucking is headquartered in Oregon and

has operating centers in Arizona, Colorado, Florida, Idaho, Indiana, and Utah.  Defendant operates approximately 800 trucks and employs approximately 870 drivers.

Plaintiffs allege four claims:  (1) minimum wage violations under FLSA (Fair Labor Standards Act), (2) minimum wage violations under ORS § 653.025, (3) improper deductions from wages in violation of ORS § 652.610, and (4) failure to pay wages upon termination in violation of ORS § 652.150.  Plaintiffs bring this action to dispute Defendant's policies of not paying drivers for attending an orientation[1], not paying drivers in the Entry Level Driver ("ELD") Program for time spent off duty or in the sleeper berth of a moving truck, and deducting for idling time, i.e., when the engine is on but the truck is not moving.  These practices are the bases for three of Plaintiffs' four claims.  For the claim under ORS § 652.150, an employer must pay all wages due upon termination of employment.  Thus, class certification of Plaintiff's fourth claim depends on certification of at least one other state law claim, either the minimum wage violation or improper deduction for idling time.

Plaintiffs seek to certify both the FLSA and Oregon claims at the same time. These are two distinctive types of class actions. The FLSA permits "collective actions" involving plaintiffs who affirmatively opt in a case.  In contrast, a member of a class certified under Rule 23 is a party to the action unless the member opts out of the class.  Defendant opposes certifying both the collective and class actions.  The basic facts concerning each of Defendant's policies follow.

A. Orientation

Prior to orientation, applicants submit a paper application so that Defendant can pre-screen the applicants.  Def.'s App'x at 195.  Defendant verifies the information (driver's license, driving record, etc.) and performs a background check.  Id. at 386.  If the applicant passes this

---

[1] I recognize that Defendant refers to the orientation as an "in person application process." However, I will use Plaintiffs' term for the sake of uniformity.

3 - OPINION & ORDER

initial check, then the applicant is invited to the orientation. Id. If the applicant is traveling a long distance to attend the orientation, Defendant may pay for the cost of travel. Id. Approximately 90-95% of the attendees of the orientation are hired as drivers. Pls.' App'x at 148. Orientation usually starts on a Tuesday and ends on a Thursday. Id. at 146. At the orientation, attendees undergo various tests (road, skills, physical, drug, etc.) and complete paperwork such as W-4 forms. Id. at 251-54. Trainers at the orientation explain Defendant's policies and procedures regarding topics such as safety, logging hours, benefits, and payroll. Id. at 148-50, 161-62.

      B.  Entry Level Driver Program

Defendant's Entry Level Driver ("ELD") Program pairs a new driver with a trainer. Id. at 15. Defendant pays the new drivers in the ELD Program a daily flat rate, which has varied from $50 to $60 during the proposed class period. Id. at 12-13. All drivers are required to keep a log of time spent in the truck. Smith Decl. ¶ 6. This "hours of service" log ("HOS" log) shows when a driver is on duty, off duty, driving, or in the sleeper berth. Id. at ¶ 7.

In April 2011, after Plaintiffs filed suit, Defendant implemented a new policy to ensure that the new drivers were paid the minimum wage. Pls.' App'x at 13-14. Defendant calculated an hourly rate based on the weekly amount paid and the number of hours spent on duty or driving. Id. If the hourly rate was less than Oregon's minimum wage, then Defendant paid an additional amount to meet the minimum wage. Id.

      C.  Idling Time

Defendant sets a limit for the amount of time that a truck can be idling. Pls.' App'x at 55. Drivers may request additional idling time out of necessity, e.g., during mechanical breakdowns or severe weather conditions. Id.; Smith Decl. ¶¶ 58-59 (400 requests for additional idling time

were granted during a two-week period in February 2011). Drivers may also elect to purchase additional idling time. Pls.' App'x at 55. The cost for additional idling time is based on an average national fuel price. Id. The additional idling time can be used to run personal electronic equipment such as computers and televisions. Def.'s App'x at 384.

                                STANDARDS

I.      Collective Action

An employee may maintain an action against an employer for violations of the FLSA on behalf of the employee and "other employees similarly situated." 29 U.S.C. § 216(b). Although the FLSA does not define the term "similarly situated," it is a "less stringent" standard than applied under Rule 23. Ballaris v. Wacker Silttronic Corp., No. Civ. 00-1627-KI, 2001 U.S. Dist. LEXIS 13354, at *5 (D. Or. Aug. 24, 2001). The plaintiff need demonstrate only a reasonable basis for a claim that the employer acted on a class-wide basis. Sheffield v. Orius Corp., 211 F.R.D. 411, 416 (D. Or. 2002), citing Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996). This burden can be satisfied by a "'modest factual showing' that plaintiffs and potential plaintiffs 'were victims of a common policy or plan that violated the law.'" Ballaris, 2001 U.S. Dist. LEXIS 13354, 2001 WL 1335809, at *2.

A plaintiff who seeks certification of a FLSA collective action also must show that other similarly situated employees wish to opt in the action. To become a party to a collective action, a person must file a written consent in the court in which the action is brought. Sheffield, 211 F.R.D. at 416. Potential plaintiffs who do not opt in are not bound by the results of the collective action. Fichtner v. American Family Mut. Ins. Co., No. Civ. 02-6284-HO, 2004 U.S. Dist. LEXIS 30242, at 23 (D. Or. Mar. 1, 2004).

5 - OPINION & ORDER

A two-step analysis is used to determine whether the employees in question are "similarly situated." McElmurry v. U.S. Bank Nat'l Ass'n, No. Civ. 04-642-HU, 2006 U.S. Dist. LEXIS 89875, at *7 (D. Or. Dec. 8, 2006).  At the first step, known as the "notice stage," the court determines based on "minimal evidence" whether potential class members should be given notice of the action.  Id. at *7-8, citing Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001).  At this stage, plaintiffs must show only "'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" Id. at *8, quoting Brown v. Money Tree Mortgage, Inc., 222 F.R.D. 676, 682 (D. Kan. 2004). The first step "results in 'conditional certification' of a representative class that allows members of the putative class to 'opt-in.'" Id., citing Hipp, 252 F.3d at 1218. "Given the limited amount of evidence generally available to the court at the first stage of the proceedings, this determination is usually made 'under a fairly lenient standard and typically results in conditional class certification.'" Smith v. T-Mobile USA, Inc., No. Civ. 05-5274 ABC (SSX), 2007 U.S. Dist. LEXIS 60729, 2007 WL 2385131, at *4 (C.D. Cal. Aug. 15, 2007) (citation omitted). The action then proceeds as a collective action throughout discovery.

The second step, known as the "decertification stage," is made "after discovery is largely complete and the matter is ready for trial." McElmurry, 2006 U.S. Dist. LEXIS 89875, at *8.  At this step, usually precipitated by a defendant's motion for decertification, the court determines whether the possible class members are similarly situated to the named representative.  If so, the representative action may proceed to trial, but if not, the court will decertify the class and dismiss the opt-in plaintiffs without prejudice and only the original plaintiffs will proceed to trial on their individual claims.  Id.  "Although the plaintiff's burden at this final stage is [stricter] than at the notice stage, the plaintiff need not show that opt-in plaintiffs are identically situated," and "need

6 - OPINION & ORDER

not prove the merits of their claim." Bouaphakeo, 564 F. Supp.2d at 892-93 (citation and quotation omitted).

II.      Class Action

Plaintiffs seeking to represent a class under Rule 23 must satisfy the threshold requirements that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact are common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

The class must also fall within one of the three categories listed in subsection (b) of Rule 23. Here, Plaintiffs seek class certification of their Oregon claims under subsection (b)(3), which requires that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Id. at 23(b)(3).

Plaintiffs bear the burden of demonstrating that each element of Rule 23 is satisfied. Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). While the primary focus is not on the merits of the plaintiff's claims, courts "must perform 'a rigorous analysis [to ensure] that the prerequisites of Rule 23(a) have been satisfied.'" Ellis v. Costco Wholesale Corp., 657 F.3d 970, 980 (9th Cir. 2011), quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). As the Supreme Court has stressed, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule— that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Id. In addition, the court's "rigorous analysis" under FRCP 23 frequently "will entail some overlap with the merits of the plaintiff's underlying claim. That

7 - OPINION & ORDER

cannot be helped." Id.  To determine whether class certification is proper, the court may consider material beyond the pleadings and require supplemental evidentiary submissions by the parties.  Blackie v. Barrack, 524 F.2d 891, 901 n17 (9th Cir. 1975).

DISCUSSION

I.   Proposed Classes

Plaintiff moves for class certification and proposes the following classes and subclasses.

A.  FLSA Class (collective action under 29 U.S.C. § 216):  All "over the road" (OTR) drivers employed by Defendant three years prior of the court's conditional certification

1. FLSA Entry Level Driver ("ELD") Subclass:  All FLSA Class members who participated in the ELD Program

B.  Oregon Class (class action under FRCP 23(b)(3)):  All OTR drivers who were dispatched from Defendant's facilities in Oregon beginning February 14, 2005 (six years prior to filing date of case)

1. Oregon ELD Subclass:  All Oregon Class members who participated in the ELD Program

2. Oregon Deduction Subclass:  All Oregon Class members who had idling time deducted from their wages

3. Oregon § 652.150 Subclass:  All Oregon Class members who were terminated during the Oregon Class period

II.  Collective Action

Plaintiffs allege that Defendant violated FLSA's minimum wage law when it failed to pay for time spent at orientation and failed to account for hours that a new driver in the ELD

8 - OPINION & ORDER

Program spent off duty or in the sleeper berth of a moving truck.[2] Plaintiffs seek conditional certification of a nationwide class of drivers employed by Defendant for the three years prior to the court's conditional certification and a nationwide subclass of ELD Program participants. To satisfy the first step of the certification, Plaintiff must show common identifiable facts or legal theories among similarly situated individuals who want to opt in the collective action.

At this first step to obtain conditional certification, Plaintiff needs to put forth "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." McElmurry, 2006 U.S. Dist. LEXIS 89875, at *8. "[S]ome identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." Sheffield, 211 F.R.D. at 416. Plaintiff has identified two policies that may violate FLSA's minimum wage law: not paying for time spent at the orientation and not paying for time spent off duty of in the sleeper berth of a moving truck.

Defendant presents two arguments against certification. First, Defendant argues that Plaintiff has not provided declarations of other employees who are interested in opting in the collective action. Defendant cites Sheffield in support of this argument. In Sheffield, the motion to certify was denied because plaintiffs did not show that they were *similarly situated* to potential class members who had submitted supporting declarations. Id. at 417. Sheffield does not require a plaintiff to provide declarations from potential class members.

Defendant next argues that the proof required for the minimum wage violation would be different for all class members. Because members would need to prove how many hours worked

---

[2] Plaintiffs argue that time categorized as "off duty" in a moving truck should also be compensated. Pls.' Mem. 7. However, Defendant argues that off duty time can never be spent on a moving truck. "Off duty" means that the "the driver is not on duty, is not required to be in readiness to work, or is not under any responsibility for performing work." 49 C.F.R. 395.8(h)(1). Regardless, Plaintiffs argue that all time spent on a moving truck is compensable, no matter how the time is logged.

9 - OPINION & ORDER

each week, there would be no "common proof" among the class members. Defendant relies on Sheffield again. This argument is not persuasive either. In Sheffield, the plaintiffs were employed by several defendants, were paid in various methods (by the job, hourly, salaried), held different job classifications, and worked at various job sites. Id. Here, there is one employer involved, one job classification, and one type of compensation. Furthermore, "[d]ifferences in wages and hours often do not prevent class certification, if there are ways to avoid testimony by every class member." Kamar v. Radio Shack Corp., et al., 254 F.R.D. 387, 402 (C.D. Cal. 2008). As the Kamar court noted, payroll records could easily show the hours worked and the amount of compensation for each class member without requiring individual testimony. Id. At this stage of certification, the primary concern is whether the class members would be similarly situated. The two policies are sufficient to create similarly situated class members because the policies were uniformly applied to the OTR drivers and participants in the ELD Program.

Plaintiffs' request for conditional certification of the FLSA class of OTR drivers and subclass of drivers in the ELD Program is granted.

III.     Class Action

There is a two-step analysis to determine whether certifying a class action under Rule 23 is appropriate. First, a plaintiff must meet four prerequisites: the class is numerous, questions of law or fact are common to the class, claims or defenses of the parties are typical to the class, and the adequacy of representatives to protect the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4). Second, the class action must fall into one of the types of actions outlined in subsection (b) of Rule 23. Here, Plaintiffs have pled a class action under Rule 23(b)(3), which requires the questions of law or fact common to the class members to predominate over individual questions and that the class action is superior to other methods for adjudicating the dispute.

A.    Prerequisites

Defendant concedes three of the four prerequisites of Rule 23.  The only prerequisite that Defendant challenges is commonality, arguing that the "questions of law or fact" are not "common to the class".  Id. at 23(a)(2).  Therefore, I will focus the discussion on the commonality prerequisite.

1.    Commonality

The Supreme Court has recently clarified the commonality requirement, at least in employment discrimination cases, by requiring "the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. at 2551 (quotation omitted).  "This does not mean merely that they have all suffered a violation of the same provision of law," but instead that their claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id.  Although "[e]ven a single [common] question will do," id. at 2556 (internal citation and quotation marks omitted), "[w]hat matters to class certification…is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  Id. at 2551 (quotation omitted).

Plaintiffs argue that there are five common questions at issue:  (1) whether class members are employees, (2) whether time spent at the orientation is compensable, (3) whether paying a daily flat fee to drivers in the ELD Program complies with Oregon's minimum wage law, (4) whether Defendant's amended compensation policy concerning the ELD Program properly

11 - OPINION & ORDER

excludes time spent in the sleeper berth while the truck is moving, and (5) whether Defendant's policy of deducting idling charges is improper. Pls.' Mem. 11.

Defendant argues that Plaintiffs' questions are "superficial" and fail to satisfy the commonality prerequisite. Def.'s Resp. 10. I disagree. Plaintiffs' questions focus on issues that will resolve the merits of the claims for all class members. More importantly however, the questions need to generate common answers for the potential class members. The questions can be grouped by the subject matter of the claims: orientation, ELD Program, and idling charges.

        a.     Orientation

Plaintiffs' first two questions concern their claim for unpaid wages for attending the orientation. Plaintiffs propose a two part inquiry: were the attendees employees and if so, should the time spent at orientation be compensable? To determine if the attendees were employees, Plaintiffs argue that the "right to control" test should be use. "The principal factors under that test are (1) the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire." Perri v. Certified Languages Int'l, LLC, 66 P.3d 531, 535 (Or. Ct. App. 2003). If the attendees are employees under the right to control test, then the next step is to consider whether the time spent at orientation should be compensable. Plaintiffs liken the orientation to training and propose using Oregon Administrative Rule 839-020-0044. The time spent in a training program is not "work time" if (a) [a]ttendance is outside of the employee's regular working hours; (b) [a]ttendance is voluntary; (c) [t]he course, lecture, or meeting is not directly related to the employee's job; and (d) [t]he employee does not perform any productive work during such attendance." OAR 839-020-0044(1).

Defendant disagrees with Plaintiffs' proposed two-step analysis using the right to control test and the OAR.  Defendant argues that the right to control test is inapplicable because it is used to determine whether a person is an employee or an independent contractor, which is not the issue before the court.  Defendant proposes using a six-factor test that the Oregon Bureau of Labor and Industries ("BOLI") has adopted from the U.S. Department of Labor.  Def.'s Resp. 15 n19.  BOLI suggests using the six-factor text to determine when an employer can utilize a student as an unpaid intern or trainee in the workplace.  Technical Assistance for Employers, Oregon.gov, http://www.oregon.gov/boli/TA/pages/t_faq_interns.aspx (last visited June 7, 2013).  Defendant argues that the six-factor test requires individualized inquiries that would defeat commonality.

I need not decide now which test is appropriate to determine the employment status of the orientation attendees.  See Clayton v. Knight Transportation, Inc., No. 1:11cv0735 LJO DLB, 2012 U.S. Dist. LEXIS 98459, at *17-18 (E.D. Cal. 2012) (employment status of orientation attendees could be determined on a group-wide basis).  The orientation content and activities did not vary for individual attendees.  A determination of whether the attendees were employees and whether they should have been paid for attending the orientation will be resolved uniformly for all potential class members.

Defendant further argues that there is no commonality among the class members because proof of a minimum wage violation depends on each individual class member.  Def.'s Resp. 22-23.  To determine a minimum wage violation, the minimum wage is determined over the pay period by dividing the total compensation by the total hours worked.  Wilken v. Cascadia Behavioral Health Care, Inc., No. CV 06-195-ST, 2007 WL 2916482, at *9, 11 (D. Or. Oct. 5, 2007) ("This court finds that a 'pay period' method applies to calculate the minimum wage under

13 - OPINION & ORDER

Oregon law."); see also OAR 839-020-0010(1) (uses "pay period" to determine compliance with payment of minimum wage).

Here, Defendant uses a weekly pay period, so the minimum wage calculation is determined on a weekly basis. Defendant did not pay attendees for time spent at the orientation. Pls.' App'x at 11. If an attendee received wages for the week, the wages were for work performed as a driver in the ELD Program. Given that orientation began on Tuesdays, if the orientation typically lasted three days, then a driver in the ELD Program would have earned wages for a maximum of two days for the weekly pay period. If attendees should have been paid to attend orientation, then there likely would have been minimum wage violations.

Regardless, whether attendees should be paid for orientation is a common question that will be answered uniformly for all class members. Although the minimum wage violation would be determined on an individual basis, there is no need for individual testimony that would defeat the benefit of proceeding as a class action. If liability is found, the calculation of damages would be a "mechanical task" that would be based on Defendant's payroll records. See Ortega v. J.B. Hunt Transport, Inc., 258 F.R.D. 361, 373 (C.D. Cal. 2009) ("The collection of necessary information and required calculations do not present an insurmountable obstacle or one that would otherwise make class certification inappropriate under the circumstances."). "[V]ariation in actual wages" do not prevent certification when "payroll records…would indicate the actual compensation." Kamar, 254 F.R.D. at 402. Defendant has not argued that it does not keep such routine business records. The commonality prerequisite has been met.

        b.      ELD Program

Defendant paid drivers a daily flat fee of $50 or $60 during the proposed class period. After filing of the suit, Defendant considered the time that a driver logged as "on duty" or

14 - OPINION & ORDER

"driving" to ensure that drivers were paid the Oregon minimum wage. Plaintiffs argue that Defendant's amended policy is still flawed because it does not compensate for all time spent in a moving truck. The answer as to whether drivers in the ELD Program should be paid for all time spent in a moving truck will apply uniformly to all potential class members. To prove a minimum wage violation, Plaintiffs relied on an expert, Dr. Joseph Krock, to create a computer program that would calculate the amount of time that a truck is moving. Krock Decl. ¶ 6. The moving time is calculated based on the geographic locations of the truck in the HOS logs. Id. at ¶ 17.

Defendant argues that the HOS logs for each individual will need to be considered to determine liability. Plaintiffs disagree, asserting that all time in a moving truck should be compensated, regardless of how the time is logged. Although each driver's HOS log would be examined for purposes of liability, Dr. Krock's computer program would process the data from an individual's HOS log to estimate the time the truck is moving. This inquiry would rely on HOS logs—records in Defendant's possession, and would not require individualized testimony. The common question of whether all time spent in a moving truck is compensable will uniformly to all class members.

Defendant further argues that Dr. Krock's program is flawed. For example, the program calculated 10.75 hours of moving time, when the geographic distance between two locations would take at most 1.2 hours to travel. Def.'s Resp. 24. Plaintiffs respond that Defendant disputes only four out of 64 calculations (6%) and that the model can be adjusted to correct the imperfections in the program calculations. Defendant also filed a motion to strike[3] Dr. Krock's

---

[3] Plaintiffs are correct that Defendant should have made its motion to strike in conjunction with its opposition to Plaintiffs' motion for certification.

15 - OPINION & ORDER

testimony because the testimony is inadmissible under Rule 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

At the certification stage, it is sufficient that an expert present "scientifically reliable evidence tending to show that a common question of fact…exists with respect to all members of the class." Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 603 (9th Cir. 2010), rev'd on other grounds, 131 S. Ct. 2541 (2011). Dr. Krock is an economist. He has multiple graduate degrees in economics and has experience analyzing complex sets of data. Krock Decl. ¶¶ 3-5. Dr. Krock processed the data using a set of assumptions. Id. at ¶¶ 15-18. As Dr. Krock explains,

> I have determined that a truck is in motion for an activity if the subsequent location lists a different city from the current activity. If the same city is listed in the subsequent location, I designated the truck in motion if the implied speed (i.e., distance divided by duration) was greater than 25 miles per hour. I also classify a truck in motion if the activity is "driving".

Id. at ¶ 17.

Defendant's main challenge to the testimony is that Dr. Krock cannot verify that the truck was actually moving. Defendant also faults Dr. Krock for not verifying the data in the HOS logs, not submitting his analysis to peer review, and not accounting for any potential rate of error. I am not persuaded by Defendant's arguments. Dr. Krock performed a set of mathematical calculations based on a set of data. Defendant does not challenge Dr. Krock's testimony based on incorrect addition, multiplication, or the like. As for the allegation of incorrect data logged by the drivers, that challenge goes to the weight, not the admissibility of Dr. Krock's conclusions. For the purpose of certification, I find that Dr. Krock's testimony may be used to show that a common question of fact exists. Defendant's motion to strike is denied.

/ / /

/ / /

c.      Idling Charges

Defendant sets a limit on idling time, but drivers may purchase excess idling time to run personal equipment such as a television.  Plaintiffs argue that the common question to the class is whether Defendant improperly deducted idling charges.  Plaintiffs argue that *all* idling deductions are improper because the cost of gasoline is a business expense.  Pls.' Mem. 16. Plaintiffs reason that having drivers living in their trucks benefit Defendant, and thus the idling charges should be borne by Defendant.  Pls.' Rep. 20.

Plaintiff essentially argues that there is never an instance in which deductions for the cost of idling time are proper.  Defendant argues otherwise and refers to ORS § 652.610(3)(b). Deductions from an employee's wages are lawful when the deductions are authorized in writing, for the employee's benefit, and are recorded in the employer's books.  ORS § 652.610(3)(b). Here, for a deduction to be improper, the idling time would need to be for Defendant's benefit.  I am not convinced that all idling time was for the benefit of Defendant.  The evidence shows that Defendant's policy allowed drivers to request additional idling time in extenuating circumstances such as breakdowns or severe weather conditions.  The court would need to examine why each driver incurred charges for additional idling time.  This claim does not present a common issue for all class members because determining the reason for idling would require individualized testimony.  The commonality prerequisite has not been met for Plaintiffs' claim of improper deductions for idling time.

B.      Type of Class Action

Plaintiffs moves to certify the class action under Rule 23(b)(3).  Under this subsection, a class may be certified if the district court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

17 - OPINION & ORDER

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  There are two components to Rule 23(b)(3): predominance and superiority.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022-23 (9th Cir. 1998).  The predominance and superiority requirements work together to ensure that certifying a class "would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997) (internal citation and quotation omitted).  Defendant concedes the superiority and challenges only the predominance component.

      1.  Predominance

 "The predominance inquiry of Rule 23(b)(3) asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation.  The focus is on the relationship between the common and individual issues."  Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1019 (9th Cir. 2011).  If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," the predominance test is generally satisfied.  Hanlon, 150 F.3d at 1022.  On the other hand, "if the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate."  Zinser, 253 F.3d at 1190 (internal quotations omitted). If common issues do not predominate, "the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified."  Id. "Considering whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying causes of action."  Erica P. John Fund, Inc. v. Halliburton Co., 131 S. Ct. 2179, 2184 (2011).

18 - OPINION & ORDER

With respect to damages, the need for individualized "damage calculations alone cannot defeat certification." Yokoyama v. Midland Nat. Life Ins. Co., 594 F.3d 1087, 1094 (9th Cir. 2010); see also Leyva v. Medline Indus. Inc., No. 11-56849, 2013 U.S. App. LEXIS 10649, at *8 (9th Cir. May 28, 2013) ("damages determinations are individual in nearly all wage-and-hour class actions"). "Calculations need not be exact…but at the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1433 (2013) (citations omitted).

    a.  Orientation

I have already found that common questions exist regarding the Defendant's policy of not paying orientation attendees. Defendant repeats its arguments that the question of a minimum wage violation is an individualized inquiry and that individual issues exist as to damages, both of which predominate over the common questions. I have already discussed earlier why these arguments fail.

    b.  ELD Program

Defendant does not provide additional arguments regarding predominance that are separate from its commonality arguments. As discussed earlier, I found that the common issues regarding the ELD Program predominate over individual issues.

    c.  Unpaid Wages at Termination

The parties agree that certification of this issue depends on the certification of at least one other state law claim. Because I have found that certification may proceed for Plaintiffs' state minimum wage violation, this subclass of employees who were terminated during the class period may proceed as well.

19 - OPINION & ORDER

CONCLUSION

Based on the foregoing, Plaintiffs' motion for class certification (#70) is granted in part and denied in part and Defendant's motion to strike (#87) is denied. The following classes are certified:

- A. FLSA Class: all over the road drivers employed by Defendant three years prior of the court's conditional certification
    1. FLSA Entry Level Driver Subclass: all FLSA Class members who participated in the ELD Program
- B. Oregon Class: All over the road drivers who were dispatched from Defendant's facilities in Oregon beginning February 14, 2005 (six years prior to filing date of case)
    1. Oregon ELD Subclass: all Oregon Class members who participated in the ELD Program
    2. Oregon § 652.150 Subclass: all Oregon Class members who were terminated during the Oregon Class period

IT IS SO ORDERED.

Dated this 10 day of June, 2013.

*Marco Hernandez*
MARCO A. HERNANDEZ
United States District Judge

20 - OPINION & ORDER