IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT NANCE and FREDERICK
FREEDMAN, individuals on behalf of
themselves, all others similarly situated,
and the general public,

No. 3:12-cv-01655-HZ

OPINION & ORDER

       Plaintiffs,

   v.

MAY TRUCKING COMPANY, an Idaho
corporation, and DOES 1 through 100,

       Defendants.


Allison H. Goddard
James Patterson
Patterson Law Group, APC
402 West Broadway, 29th Floor
San Diego, CA 92101

Steve D. Larson
Jennifer S. Wagner
Stoll Stoll Berne Lokting & Shlachter
209 SW Oak Street, 5th Floor
Portland, OR 97204

    Attorneys for Plaintiffs

1 - OPINION & ORDER

Adam C. Smedstad
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
30 West Monroe Street, Suite 600
Chicago, IL 60603

James H. Hanson
Kelli M. Block
R. Jay Taylor, Jr.
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
10 West Market Street, Suite 1500
Indianapolis, IN 46204

Kim T. Buckley
Esler Stephens & Buckley
888 SW Fifth Avenue, Suite 700
Portland, OR 97204-2021

   Attorneys for Defendants

HERNANDEZ, District Judge:

   Plaintiffs Scott Nance and Frederick Freedman are former employees of Defendant May Trucking Company. Plaintiffs allege claims for minimum wage violations, improper deduction of wages, and failure to pay wages upon termination. Plaintiffs sue on behalf of themselves and others similarly situated. The court previously granted in part Plaintiffs' motion for class certification.

   Before the court are the parties' motions for summary judgment. Plaintiffs move on two issues: (1) Oregon law should apply to the Oregon Class claims, and (2) time spent in the sleeper berth of a moving truck is compensable. Defendant moves on two issues as well: (1) Plaintiffs were not employees at the time of orientation, and thus there is no minimum wage violation, and (2) Plaintiffs were paid the minimum wage or more as participants in the Entry Level Driver Program. In the alternative, if the court finds that summary judgment cannot be granted on the Entry Level Driver Program claim, Defendant requests summary judgment on the issue that for all class members, time spent in the sleeper berth is not compensable.

2 - OPINION & ORDER

Based on the reasons to follow, I deny Plaintiffs' motion for partial summary judgment [111], grant Defendant's motion for summary judgment [108], and deny Defendant's motion to strike [126].

BACKGROUND

Defendant May Trucking Company is a for-hire motor carrier that provides trucking services nationwide. Smith Decl. [110] ¶ 2. The company is headquartered in Brooks, Oregon and operates terminals in Arizona, Colorado, Florida, Idaho, Indiana, and Utah. Id. at ¶ 3. May Trucking has a fleet of 800 trucks and employs about 870 over-the-road truck drivers—drivers who make deliveries nationwide. Id.

May Trucking requires all applicants to attend an orientation. Pls.' Supplemental App'x [120] ("PSA") Ex. 17 at 2. Only applicants who have demonstrated minimum qualifications will be invited to the orientation. PSA Ex. 18 at 34. Plaintiff Scott Nance attended orientation in Oregon beginning August 30, 2011. Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s MSJ") Ex. H at 17. At the orientation, Nance completed a "Driver Qualification Form" and agreed to drug and alcohol testing. Def.'s MSJ Ex. C at 2. The form also included statements that Nance understood that the filling out the form "does not obligate May Trucking Company in any way" and that the form must be signed to "commence with the qualification process with May Trucking Company." Id. Nance signed the form on August 30, 2010. Id. After the two-day orientation, Nance entered the Entry Level Driver ("ELD") Program. Def.'s MSJ Ex. H at 13. As a trainee in the ELD Program, Nance was assigned a trainer, whom he shadowed. Id. at 12. Nance was paid $50 per day as a trainee. Def.'s MSJ Ex. C at 3.

Plaintiff Frederick Freedman went through a similar application process with May Trucking. He signed the Drive Qualification Form on December 13, 2010. Def.'s MSJ Ex. D at

3 - OPINION & ORDER

2. However, Freedman did not pass the mandatory physical on the first day of orientation because of his high blood pressure. Def.'s MSJ Ex. G at 11-12. Freedman decided to complete the orientation, even though he understood that he would not be hired until after he passed the physical. Id. at 13, 14. He later passed the physical. Id. at 21. On February 27, 2011, Freedman was assigned a trainer and entered the ELD Program. Id. at 25. Freedman was paid $50 per day as a trainee. Smith Decl. ¶ 15.

Plaintiffs are no longer employed with May Trucking. Nance worked for May Trucking for about six weeks; and Freedman worked for about five months. Id. at ¶ 16.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

4 - OPINION & ORDER

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

Plaintiffs move for partial summary judgment on two issues: (1) Oregon law should apply to the Oregon Class claims, and (2) time spent in the sleeper berth of a moving truck is compensable. Defendant moves for partial summary judgment on two issues: (1) Plaintiffs were not employees at the time of orientation, and thus there is no minimum wage violation, and (2) Plaintiffs were paid the minimum wage or more as participants in the Entry Level Driver Program. In the alternative, if the court finds that summary judgment cannot be granted on the Entry Level Driver Program claim, Defendant requests summary judgment on the issue that for all class members, time spent in the sleeper berth is not compensable.

I.      Minimum Wage Violation – Unpaid Orientation

In their first and second claims, Plaintiffs Nance and Freedman allege that May Trucking violated the Fair Labor Standards Act ("FLSA") and Oregon minimum wage laws, 29 U.S.C. § 206 and ORS § 653.025, when it did not pay for time spent at the orientation. Third Am. Compl. ¶¶ 38, 61. May Trucking counters that Nance and Freedman were not employees at the time of orientation. Def.'s MSJ 8.

5 - OPINION & ORDER

FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e). "Employ" is defined as "to suffer or permit to work." Id. at § 203(g). "[T]he [Oregon] legislature adopted the FLSA's definition of 'employ' for the purpose of the state minimum wage laws as including 'to suffer or permit to work.'" Dinicola v. State, 268 P.3d 632, 642 (Or. Ct. App. 2011); see ORS § 653.010(2) (definition of "employ"). There is no definition of "employee" under the Oregon minimum wage statute. Thus, for both the federal and state claims, the central inquiry is whether May Trucking suffered or permitted Plaintiffs to work during orientation.

The parties dispute how the analysis should proceed. Plaintiffs argue that a "right to control" test should be used. Pls.' Resp. 5 (citing Perri v. Certified Languages Int'l, LLC, 66 P.3d 531, 535 (Or. Ct. App. 2003)). The "status of a worker" is determined by analyzing the following factors of the right to control test: "(1) the right to, or the exercise of, control; (2) the method of payment; (3) the furnishing of equipment; and (4) the right to fire." Id. In Perri, however, the issue was whether the person was an employee or an independent contractor. Id. at 534-35. Because there are no allegations that Plaintiffs were independent contractors, the right to control test is not applicable.

May Trucking proposes using a six-factor test created by the Wage and Hour Division of the Department of Labor ("DOL"). Def.'s MSJ 7. The DOL test is based on Walling v. Portland Terminal Company, a case in which the court held that railroad worker trainees were not employees. 330 U.S. 148, 153 (1947). Based on the Portland Terminal Court's reasoning, the DOL opines that trainees are not employees for the purposes of FLSA if the following six factors are met:

6 - OPINION & ORDER

> 1. The training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school.
> 2. The training is for the benefit of the trainees.
> 3. The trainees do not displace regular employees, but work under their close observation.
> 4. The employer that provides the training derives no immediate advantage from the activities of the trainees; and on occasion operations may actually be impeded.
> 5. The trainees are not necessarily entitled to a job at the conclusion of the training period.
> 6. The employer and the trainees understand that the trainees are not entitled to wages for the time spent in training.

2004 DOLWH LEXIS 56, at *4 (Oct. 19, 2004). May Trucking proposes using a flexible approach with these factors—that the factors should be weighed, rather than an all or nothing approach. Def.'s MSJ 8. This flexible approach has been applied by other courts. See e.g., Harris v. Vector Mktg. Corp., 753 F. Supp. 2d 996, 1006 (N.D. Cal. 2010) ("[T]here is nothing in Portland Terminal itself to support an all or nothing approach."); Reich v. Parker Fire Protection Dist., 992 F.2d 1023, 1026 (10th Cir. 1993) ("The prefatory language to the Secretary's [DOL] test itself makes clear that the six factors are meant as an assessment of the totality of the circumstances.").

Plaintiffs disagree that the DOL test applies because the orientation is not a training program designed to teach truck driving skills. Pls.' Resp. 3. Plaintiffs point out that at orientation, the attendees go through several tests (road, drug, physical), complete paperwork, and spend time in the classroom with a trainer. PSA Ex. 18 at 44, 47-54. Relying on their expert, Lew Grill, Plaintiffs argue that the orientation activities are unlike a standard truck driving school curriculum.[1] Pls.'s Resp. 4 (citing Grill Decl. ¶¶ 17, 23-24). Plaintiff's argument

---

[1] Defendant moved to strike Grill's declaration and to bar his testimony at trial. Defendant argues that Plaintiffs failed to timely disclose Grill as an expert and that his testimony is not reliable or relevant because he lacks personal knowledge of the facts in this case. Def.'s Mot. Strike 3, 8-9. I disagree with both of these arguments. The deadline for expert disclosures has

7 - OPINION & ORDER

is not persuasive. I agree that May Trucking's orientation is not equivalent to the more in depth training at a truck driving school that typically lasts for weeks. However, the activities at the orientation, particularly the classroom training portion, qualify as training, such that the DOL test could be applicable.

In the alternative, Plaintiffs propose using a "primary beneficiary" test developed by the Fourth Circuit in McLaughlin v. Ensley, 877 F.2d 1207, 1208 (4th Cir. 1989). Pls.' Resp. 6. This primary beneficiary test originates from Portland Terminal, the case from which the DOL test is derived. In McLaughlin, the Fourth Circuit focused on "whether the employee or the employer is the primary beneficiary of the trainees' labor." Id. at 1209. This test is based on another Fourth Circuit case that interpreted Portland Terminal.

> Portland Terminal had established that when "the employer received no 'immediate advantage' from the trainees' services," that is, when "the principal purpose of the seemingly employment relationship was to benefit the person in the employee status," the worker could not be brought under the Act.

Id. (citing Isaacson v. Penn Community Services, Inc., 450 F.2d 1306, 1308 (4th Cir. 1971)). The Fourth Circuit expressly rejected the DOL test because prior cases had established principles derived from Portland Terminal. Id. at 1210 n2 ("We do not rely on the formal six-part test issued by the Wage and Hour Division. Instead, because of the clear precedent of Wardlaw and Penn Community Services, we believe proper analysis derives from the principles stated in those cases.").

The Ninth Circuit has yet to adopt the DOL test. In Williams v. Strickland, the Ninth Circuit relied upon Portland Terminal to determine whether the plaintiff was an employee within

---

not passed (90 days prior to trial per Rule 26(a)(2)(D)). Furthermore, as an expert, the relevance of Grill's testimony is based on his opinion of trucking school curriculum, not his personal knowledge of the facts in this case. Defendant's motion to strike [126] is denied.

8 - OPINION & ORDER

the protection of FLSA.[2]  87 F.3d 1064, 1066 (9th Cir. 1996).  The Williams court focused on two principles from Portland Terminal:

> [f]irst…the definition of employee was "not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another," and second, the FLSA does not make a person "whose work serves only his own interest an employee of another person who gives him aid and instruction."

Id. at 1066 (quoting Portland Terminal, 330 U.S. at 152).  "Applying these principles, the [Portland Terminal] Court held that the trainees were not employees because the railroad received no 'immediate advantage' from their work." Id. (quoting Portland Terminal, 330 U.S. at 153).

The Williams court also considered a second case, Tony and Susan Alamo Foundation v. Secretary of Labor, 471 U.S. 290 (1985), for guidance on the issue.  In Alamo, the issue was whether "workers engaged in the commercial activities of a religious foundation" were employees, even though those workers considered themselves volunteers. Id. at 291-92.  Despite the workers' belief that they were volunteers, the court did not find this fact dispositive because "[t]he test of employment under [FLSA] is one of 'economic reality'[.]" Id. (citing Goldberg v. Whitaker House Cooperative, Inc., 366 U.S. 28, 33 (1961)).  Ultimately, the Williams court held that the plaintiff was not an employee under FLSA because he "had neither an express nor an implied agreement for compensation." Williams, 87 F.3d at 1067.

The difference between the DOL test proposed by Defendant and the Fourth Circuit primary beneficiary test proposed by Plaintiffs is one of form, rather than substance.  Both tests have origins in Portland Terminal.  In determining the primary beneficiary of the trainees' labor, the factors in the DOL test are valid considerations.  However, I am most persuaded by the

---

[2] Although the Ninth Circuit has yet to adopt the DOL test, the test has been used by district courts in this circuit.  See e.g., Harris, 753 F. Supp. 2d 996; Ulrich v. Alaska Airlines, Inc., No. C07-1215RSM, 2009 U.S. Dist. LEXIS 10104 (W.D. Wash. Feb. 9, 2009).

9 - OPINION & ORDER

analysis of Portland Terminal provided by the Ninth Circuit in Williams.  Therefore, to determine whether Plaintiffs were employees of Defendant during the orientation, I will consider (1) whether Defendant received an "immediate advantage" from Plaintiffs' work at the orientation and (2) whether there was an express or implied agreement for compensation.

In Portland Terminal, the defendant employer provided a week-long practical training course to prospective yard brakeman.  330 U.S. at 149.  The court found relevant that the trainee did not displace any regular employees and the work performed by the trainees did not expedite the company's business, and may have even impeded the business.  Id. at 150.  The court did not find relevant that upon successful completion of the course, the defendant employer had a qualified labor pool from which it could hire employees.  Id. at 153.  Trainees were not paid, but qualified for retroactive pay.  Because the employer received no "immediate advantage" from the work performed by the trainees, the trainees were not employees.  Id.

Here, Plaintiff Nance attended a two-day orientation, while Plaintiff Freedman attended a four-day orientation.  Def.'s MSJ Exs. G at 18, H at 13.  During orientation, Plaintiffs underwent qualification tests (e.g., drug, road, physical) and learned to safely operate a truck.  PSA Ex. 17 at 8; Def.'s MSJ Exs. G at 16-17, H at 9-10.  Plaintiffs did not haul any loads for May Trucking and May Trucking's regular employees were not displaced during orientation.  Def.'s MSJ Exs. G at 22, H at 14.  Plaintiffs were not paid to attend orientation and there was no agreement, implied or express, that Plaintiffs would be paid for their time at orientation.  Id. Exs. G at 24-25, H at 14-15.  In light of these undisputed facts, I find that Defendant did not receive any immediate advantage as a result of Plaintiffs' attendance at orientation.  Thus, Plaintiffs Nance and Freedman were not employees of May Trucking during orientation.  Defendant's motion is

granted regarding Plaintiffs' federal and state minimum wage claims based on allegations of unpaid orientation time.

II.     Minimum Wage Violation – ELD Program

In their first and second claims, Plaintiffs Nance and Freedman allege that May Trucking violated FLSA and Oregon minimum wage laws for trainees in the ELD Program. Third Am. Compl. ¶¶ 42, 64. Nance and Freedman argue that the violations occurred when May Trucking did not pay trainees for time spent in the sleeper berth of a moving truck. Pls.' Mem. Supp. Mot. Summ. J. ("Pls.' MSJ") 13. May Trucking argues that Plaintiffs have no evidence of the amount of time they spent in a moving truck and that estimates from their expert, Dr. Joseph Krock, cannot be relied upon. Def.'s MSJ 12. Alternatively, May Trucking argues that as a matter of law, time spent in the sleeper berth of a moving truck is not compensable. Def.'s MSJ 16.

A.      Sleeper Berth Time

I first address the legal question of whether time spent in the sleeper berth is compensable because the truck is moving. Both parties have moved on this issue. Plaintiffs argue that because May Trucking "controls" the Plaintiffs while the truck is moving, time spent on a moving truck is compensable. Pls.' MSJ 13; Pls.' Resp. 16-17. In other words, Plaintiffs argue that time spent waiting in the sleeper berth is compensable because the waiting time primarily benefitted May Trucking. Pls.' MSJ 13.

Because the factual situations vary so greatly, the Supreme Court has refused to state a test to determine whether waiting time is compensable. Skidmore v. Swift & Co., 323 U.S. 134, 136 (U.S. 1944). "Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged." Id. at 137. The Ninth Circuit focuses on two factors to determine if an employee is "engaged to wait," and thus should be compensated: (1) "the degree to which

11 - OPINION & ORDER

the employee is free to engage in personal activities" and (2) "the agreements between the parties." Brigham v. Eugene Water & Elec. Bd., 357 F.3d 931, 936 (9th Cir. 2004). Analysis of the first factor, freedom to engage in personal activities, involves several more factors:

> (1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether the use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time.

Id. (quoting Owens v. Local No. 169, 971 F.2d 347, 351 (9th Cir. 1992)).

Plaintiffs rely on several "on call" cases to support its argument that sleeper berth time in a moving truck is compensable. See e.g., Armour & Co. v. Wantock et al, 323 U.S. 126 (1944), Brigham, 357 F.3d 931; Owens, 971 F.2d 347. These cases involve circumstances in which the employee was on call. Armour, 323 U.S. at 126 (firemen worked 8:00 a.m. to 5:00 p.m. and then were on call in the fire hall until 8:00 a.m. the next day); Brigham, 357 F.3d at 934 (employee for power generation facility was required to "respond immediately" when on 24-hour "duty shift"); Owens, 971 F.2d at 348 (pulp mill employees were subject to an after-hours call-in policy in the event of a mechanical breakdown). These on call cases are inapplicable to the factual situation here. There is no evidence that May Trucking required trainees in its ELD Program to be on call or on duty for 24-hour shifts. The seven "freedom to engage in personal activities" factors were formulated with the presumption that the employee was on call and could be called back to work. In the context of trainees in the ELD Program, none of the factors help determine whether time spent in the sleeper berth is compensable.[3] The factors simply do not apply.

---

[3] Plaintiffs attempt to apply the factors, but the result is unpersuasive. Pls.' MSJ 14-15. For example, the first factor considers whether there was an on-site living requirement. Plaintiffs

12 - OPINION & ORDER

Defendant relies primarily on federal regulations from the Department of Labor to support its argument that sleeper berth time in a moving truck is not compensable. Def.'s MSJ 18; Def.'s MSJ Reply 12. Although the regulations are non-binding, the Ninth Circuit has turned to these regulations as guidance "to assist in assessing the compensability of waiting time under FLSA." Brigham, 357 F.3d at 940.

The following regulation concerns drivers who work while traveling.

> Work performed while traveling. Any work which an employee is required to perform while traveling must, of course, be counted as hours worked. *An employee who drives a truck*, bus, automobile, boat or airplane, *or an employee who is required to ride therein as an assistant or helper, is working while riding, except during bona fide meal periods or when he is permitted to sleep in adequate facilities furnished by the employer*.

29 C.F.R. § 785.41 (emphasis added). Oregon adopted a rule with nearly identical language.

> Work performed while traveling includes any work which an employee is required to perform while traveling and must be counted as hours worked. *An employee who drives a truck*, bus, automobile, boat or airplane, *or an employee who is required to ride therein as an assistant or helper, is working while riding, except during bona fide meal periods or when the employee is permitted to sleep in adequate facilities furnished by the employer*.

Or. Admin. R. 839-020.0045(7) (emphasis added). A truck driver, or a person riding along as an assistant, is not working if the employee is permitted to sleep in adequate facilities provided by the employer. Defendant argues that because Plaintiffs were permitted to sleep in the sleeper berth, time spent in the sleeper berth is not considered working time. Plaintiffs argue that 29

---

concede that the drivers were not required to live on the truck. Id. at 14. But then Plaintiffs propose changing the inquiry to whether the drivers were required to be on the truck while it is moving. Id. The on-site living requirement factor stems from cases in which employees were required to live and remain on-site while on call. Owens, 971 F.2d at 351 n8 (citing Armour, 323 U.S. at 134) (on-call employees were firemen who lived on-site at the fire station). By changing the first factor into whether the drivers were required to be on the moving truck, Plaintiffs ignore that the drivers were not subject to any on call duties. Plaintiffs' application of the remaining factors similarly misses the mark.

13 - OPINION & ORDER

C.F.R. § 785.41 does not apply because the regulation is limited to employees who travel on an incidental basis. Pls.' Reply 9 (citing Dole v. Enduro Plumbing, Inc., No. 88-7041-RMT, 1990 U.S. Dist. LEXIS 20135, at *15 (C.D. Cal. Oct. 16, 1990)). I disagree. There is no such limitation in the regulation or in the California district court case cited by Plaintiffs.

Applying 29 C.F.R. § 785.41, a driver in the ELD Program is not working if the driver is permitted to sleep in "adequate facilities furnished by the employer." According to the Field Operations Handbook[4] created by the U.S. Department of Labor, the sleeper berths "are regarded as adequate sleeping facilities for the purposes of…[section] 785.41[.]" U.S. Department of Labor Field Operations Handbook, Chapter 31 Hours Worked, Section 31b09(a) (Dec. 15, 2000), http://www.dol.gov/whd/FOH/. Plaintiffs disagree that the sleeper berths are adequate facilities, arguing that the drivers are confined to a limited space and the absence of a bathroom.[5] Pls.' Reply 9-10. Plaintiffs do not cite to any authority to support its argument. I am persuaded by the Department of Labor's guidance on whether the sleeper berth is an adequate sleeping facility, and find that the sleeper berth is an adequate sleeping facility for the purposes of 29 C.F.R. § 785.41.

Plaintiffs further argue that a different regulation, 29 C.F.R. § 785.21, is more applicable. Section 785.21 applies to employees who are required to be on duty for less than 24-hours.

---

[4] The Field Operations Handbook "provides Wage and Hour Division (WHD) investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance. The FOH was developed by the WHD under the general authority to administer laws that the agency is charged with enforcing." U.S. Department of Labor, Wage and Hour Division, http://www.dol.gov/whd/FOH/ (last updated August 13, 2013).
[5] Plaintiffs also presented evidence from one trainer who testified that he gave assignments to trainees, such as trip planning or reading a reference manual, and that the trainees would usually complete the assignments in the sleeper berth. Goddard Decl. [113] Pls.' App'x ("PA") Ex. 15 at 77. If trainees performed work while in the sleeper berth, they must be compensated. However, that is not the claim before this court. Plaintiffs' minimum wage claim is based on *all* time spent in the sleeper berth of a moving truck, regardless of what the trainees were doing.

14 - OPINION & ORDER

> An employee who is *required to be on duty* for less than 24 hours is working even though he is permitted to sleep or engage in other personal activities when not busy. A telephone operator, for example, who is *required to be on duty* for specified hours is working even though she is permitted to sleep when not busy answering calls. It makes no difference that she is furnished facilities for sleeping. Her time is given to her employer. She is *required to be on duty* and the time is worktime.

29 C.F.R. § 785.21 (emphasis added). I disagree that section 785.21 is applicable for the same reason that the on call cases were not applicable. The trainees in the ELD Program are not required to be on call when they spend time in the sleeper berth.

As a matter of law, I find that time spent in the sleeper berth, simply because the truck is moving, is not compensable. Defendant's motion is granted and Plaintiffs' motion is denied on this issue.

        B.       Sufficiency of Dr. Krock's Testimony

Defendant challenges the sufficiency of the evidence provided by Dr. Krock to support Plaintiffs' claim that all sleeper berth time is compensable. Based on data from a driver's hours of service log and payroll records, Dr. Krock estimated the amount of time a driver spent in the sleeper berth of a moving truck. Krock Decl. [74] ¶ 8. I have already addressed the legal issue of whether sleeper berth time in a moving truck is compensable. Because I have found that it is not, I need not address the sufficiency of Dr. Krock's calculations.

III.    Applying Oregon Law to Oregon Class Claims

Plaintiffs move for partial summary judgment on the issue of whether Oregon law should apply to all work performed by Oregon Class members, even for work performed outside of Oregon. Pls.' MSJ 1. This issue affects Plaintiffs' second claim for minimum wage violations under ORS § 653.055 and fourth claim for failure to pay all wages upon termination in violation of ORS § 652.150. Third Am. Compl. 11, 13.

15 - OPINION & ORDER

Plaintiffs argue that Oregon's minimum wage law can be applied to the Oregon Class members because of the following definition of employee.

> "Employee" means any individual who otherwise than as copartner of the employer or as an independent contractor *renders personal services wholly or partly in this state* to an employer who pays or agrees to pay such individual at a fixed rate, based on the time spent in the performance of such services or on the number of operations accomplished, or quantity produced or handled.

ORS § 652.310(2) (emphasis added). There are two exceptions to this definition of employee: (1) the individual is an independent contractor or (2) when the work is performed only partly in Oregon, the individual is not an employee unless the employment contract was entered in Oregon or payments are ordinarily made within Oregon. Id. Plaintiffs supplemented the record to show that Nance and Freedman have driven loads through Oregon. Supp. Goddard Decl. [139] Exs. 17-18. Plaintiffs' evidence also shows that they were dispatched from Oregon and that their payroll was processed in Oregon. PA Ex. 2 at 20-21. Therefore, based on the definition of employee from ORS § 652.310, Plaintiffs consider themselves employees within Oregon, and thus subject to the minimum wage statute, even though some work was performed outside of Oregon.

Defendant disagrees that the definition of employee from ORS § 652.310 applies to Plaintiffs' minimum wage claims. Defendant's argument is based on statutory interpretation—that the definition of employee in ORS § 652.310 does not apply to the minimum wage statute in ORS § 653.055. Def.'s Resp. 4-5. Plaintiffs' proposed definition of employee from ORS § 652.310 is specifically limited to sections 652.310 through 652.414. ORS § 652.310. Additionally, ORS § 653.055—the minimum wage statute—has its own set of definitions. Although "employee" is not defined, "employer" and "employ" are. ORS § 653.010(2)-(3). Because the legislature set out separate definitions for chapters 652 and 653, Defendant argues

16 - OPINION & ORDER

that the employee definition from ORS § 652.310 does not apply to the minimum wage statute in ORS § 653.055.

No case law directly addresses whether the Oregon minimum wage law should apply to work performed outside of Oregon.  In Taylor v. Werner Enterprises, Inc., the Oregon Supreme Court applied Oregon law to the employment relationship between a truck driver who resided in Oregon and his employer, a Nebraska corporation.  988 P.2d 384, 386-87 (Or. 1999).  However, the issue of whether Oregon law or Nebraska law should apply was not raised on appeal, and thus, the Court applied Oregon law without a discussion on the merits of the issue.  Id. at 387.  In another case, Castro-Vega v. Waible, the court cited Taylor and applied the definition of "employer" from ORS § 652.310 to the minimum wage statute.  No. CV-07-675-ST, 2007 U.S. Dist. LEXIS 96350, at *2 (D. Or. Nov. 7, 2007).  In the absence of a discussion on the merits in Taylor and Castro-Vega, the issue of whether the employee definition from ORS § 652.310 applies to the minimum wage statute in ORS § 653.055 remains unanswered.

Plaintiffs' claims for Oregon minimum wage violations depend on two theories: orientation attendees should have been paid for time spent at orientation and trainees in the ELD Program should have been paid for time spent in the sleeper berth of a moving truck.  I have already ruled that May Trucking need not compensate for time spent at orientation or in the sleeper berth of a moving truck as claimed.  In light of these rulings, Plaintiffs' claims for minimum wage violations are foreclosed.  Therefore, I need not decide whether Oregon law would have applied to those claims.  Plaintiffs' motion for partial summary judgment on the issue is denied as moot.

/ / /

/ / /

17 - OPINION & ORDER

CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment [108] is granted; Plaintiffs' motion for partial summary judgment [111] is denied; and Defendant's motion to strike [126] is denied.

IT IS SO ORDERED.

Dated this \_\_15\_\_ day of January, 2014.

/s/ Marco Hernandez
MARCO A. HERNANDEZ
United States District Judge

18 - OPINION & ORDER