IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SCOTT NANCE and FREDERICK FREEDMAN, individuals on behalf of themselves, all others similarly situated, and the general public,<br><br>           Plaintiffs,<br><br>   v.<br><br>MAY TRUCKING COMPANY, an Idaho corporation, and DOES 1 through 100,<br><br>           Defendants. | No. 3:12-cv-01655-HZ<br><br>FINDINGS OF FACT & CONCLUSIONS OF LAW |

Allison H. Goddard
James Patterson
Patterson Law Group, APC
402 West Broadway, 29th Floor
San Diego, CA 92101

Steve D. Larson
Jennifer S. Wagner
Stoll Stoll Berne Lokting & Shlachter
209 SW Oak Street, 5th Floor
Portland, OR 97204

     Attorneys for Plaintiffs

1 - FINDINGS OF FACT & CONCLUSIONS OF LAW

Adam C. Smedstad
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
30 West Monroe Street, Suite 600
Chicago, IL 60603

James H. Hanson
Kelli M. Block
R. Jay Taylor, Jr.
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
10 West Market Street, Suite 1500
Indianapolis, IN 46204

Kim T. Buckley
Esler Stephens & Buckley
888 SW Fifth Avenue, Suite 700
Portland, OR 97204-2021

>        Attorneys for Defendants

HERNÁNDEZ, District Judge:

>        Plaintiffs Scott Nance and Frederick Freedman are former employees of Defendant May Trucking Company. Plaintiffs alleged minimum wage violations, improper deduction of wages, and penalty wages for failure to pay wages upon termination, on behalf of themselves and others similarly situated. Plaintiffs' motion for class certification was granted in part. Only the improper deduction claim was not certified.

>        After ruling on summary judgment motions, the claims remaining for trial were the third claim for improper deductions under ORS § 652.610 and the fourth claim for penalty wages for failure to pay wages upon termination under ORS § 652.140. The fourth claim for penalty wages is dependent on a finding that improper deductions occurred. Because the improper deduction claim was not certified, only Plaintiff Freedman asserts these claims. Plaintiff seeks $400 in penalties pursuant to ORS § 652.615 for improper deductions and $3,129.90 in penalty wages pursuant to ORS § 652.150 for failure to pay all wages upon termination. Plaintiff agreed to

2 - FINDINGS OF FACT & CONCLUSIONS OF LAW

waive his right to a jury trial on these claims. Feb. 11, 2014 Order [151]. On March 19, 2014, a one-day court trial was held. The following are my findings of fact and conclusions of law.

FINDINGS OF FACT

Based on the evidence present at trial, I find the following:

1. Plaintiff Freedman is a resident of Arizona and was hired in Arizona by Defendant May Trucking. Because Plaintiff resides in Arizona, his withholding taxes were reported to Arizona.

2. Plaintiff was dispatched out of Brooks, Oregon, Defendant's headquarters. Defendant reported Plaintiff's wages for unemployment purposes to the State of Oregon.

3. Defendant processed Plaintiff's payroll at its headquarters in Oregon. Plaintiff was paid from Oregon.

4. Plaintiff agreed to have all workers' compensation claims adjudicated in Oregon. Ex. 15 at 3.

5. Defendant has an engine idle policy that states the maximum amount of time a driver is allowed to idle the truck. The driver may exceed these limits by purchasing additional idle time. The driver may also seek authorization to idle the truck beyond the limits for exceptional circumstances, such as mechanical breakdowns or severe weather conditions. Ex. 3.

6. Plaintiff signed an authorization titled "Engine Idle Policy and Authorization to Deduct" on December 15, 2010. The authorization states that "[u]se of excess engine idle time is for my benefit and indicates my voluntary election to incur this cost. Amounts owed…are to be deducted…during the two pay periods (two weeks) following each engine extraction." Ex. 4.

7. On April 13, 2011, Plaintiff picked up a truck from a shop in Phoenix, Arizona. The driver log shows that Plaintiff was assigned truck #4863, but Plaintiff testified that he drove truck #4480. Plaintiff discovered that the truck battery was dead. The truck was jump-started and Plaintiff drove the truck to May Trucking's yard, arriving at about 11:00 a.m. Plaintiff alerted the safety manager at the yard that the truck needed to idle to recharge the battery. Plaintiff left the idling truck at about 11:25 a.m. Ex. 512 at 66.

8. Plaintiff returned the next morning on April 14, 2011, around 7:00 a.m., and found the truck still idling. Plaintiff confirmed that the truck's battery had been recharged. At 8:53 a.m., Plaintiff went on duty and left at 9:24 a.m. to pick up a load at Avondale, Arizona. Ex. 512 at 67.

3 - FINDINGS OF FACT & CONCLUSIONS OF LAW

9. Defendant uses a program called Sensor TRAC that pulls data from the truck's engine. The data shows the total amount of time the engine was on and the portion of time the truck was idling during that total time. The Sensor TRAC data is extracted every two weeks at about 11:00 a.m. on the cutoff date.

10. On April 15, 2011, an extraction occurred at 11:05 a.m. to pull data for April 2 – 15, 2011. The data shows that the engine for Plaintiff's truck was on for a total of 3.38 hours and idled for 2.71 hours of the total. Ex. 513 at 1. Because only 0.34 hours of idle time was allowed for that period, there was an excess of 2.37 hours of idle time, which is equivalent to $8.69. Id.

11. The Sensor TRAC data from the April 15, 2011 extraction is incorrect. On April 14, 2011, Plaintiff drove for nine hours and 54 minutes—from Phoenix, Arizona to Shafter, California. Ex. 512 at 67. But the Sensor TRAC data for the period ending April 15, 2011 shows that the engine was on for only 3.38 hours. Additionally, on April 13 – 14, 2011, Plaintiff idled the truck to charge the battery for approximately 19 hours, but the Sensor TRAC data shows only 2.71 hours of idling.

12. For payroll ending April 20, 2011, Defendant deducted $8.69 from Plaintiff's wages for excess idling time. Ex. 507 at 13-14.

13. On April 21, 2011, Plaintiff complained to accounting that he should not have been deducted for excess idle time. Plaintiff received a credit of 14 hours of idling time for charging the truck battery on April 13 – 14, 2011. Ex. 512 at 4. Neither Defendant nor Plaintiff knows why only 14 hours of credit were given.

14. On April 29, 2011, an extraction occurred at 11:00 a.m. to pull data for April 16 – 29, 2011. The data shows that the engine for Plaintiff's truck was on for a total of 80.31 hours and idled for 24.01 hours. Ex. 513 at 2. Because only 8.03 hours of idle time was allowed for that period, there was an excess of 15.98 hours of idle time. Id. However, with the 14 hours of idling time credit, the excess idling time was reduced to 1.98 hours, which is equivalent to $7.30. Id.

15. For payroll ending May 4, 2011, Defendant deducted $7.30 from Plaintiff's wages for excess idling time. Ex. 507 at 15-16. Plaintiff did not complain to accounting about the $7.30 deduction.

16. Plaintiff did not idle his truck for personal reasons, e.g., while in the sleeper berth, to watch television, to charge personal devices, or to keep the truck warm.

17. Defendant does not track when the additional idling time is incurred or the purpose of the additional idling time. Defendant presumes that the excess idle time is for the truck driver's benefit.

4 - FINDINGS OF FACT & CONCLUSIONS OF LAW

> 18. Plaintiff drove through Oregon, as well as California and Washington states, during the payrolls ending April 20, 2011 and May 4, 2011.  Ex. 507 at 13-16.

## DISCUSSION

Before analyzing Plaintiff's third and fourth claims, I first must address whether Oregon law applies to Plaintiff Freedman.  Defendant raises the issue of whether Oregon law applies to Plaintiff.  Defendant argues that Oregon law does not apply because Plaintiff is a resident of Arizona, had withholding taxes reported to Arizona, and was hired in Arizona.  Defendant does not provide any authority that a person is considered an employee of the state of residence or where the person was hired.

> Plaintiff responds that he is an Oregon employee based on the following definition.
>
> "Employee" means any individual who otherwise than as copartner of the employer or as an independent contractor *renders personal services wholly or partly in this state* to an employer who pays or agrees to pay such individual at a fixed rate, based on the time spent in the performance of such services or on the number of operations accomplished, or quantity produced or handled.

ORS § 652.310(2) (emphasis added).  There are two exceptions to this definition of employee: (1) the individual is an independent contractor or (2) when the work is performed only partly in Oregon, the individual is not an employee unless the employment contract was entered in Oregon or payments are ordinarily made within Oregon.  Id.  The evidence shows that only part of the work was performed in Oregon, but that payment of wages is made from Defendant's headquarters in Oregon.  Applying this definition of "employee," Oregon law would apply to Plaintiff.  Other evidence in the record persuades me that Oregon law should apply.  For example, Plaintiff received dispatch orders from Oregon, Defendant reported Plaintiff's wages to Oregon for unemployment purposes, and the parties agreed that any workers' compensation claim would be adjudicated in Oregon.  Thus, I conclude that Oregon law applies to Plaintiff Freedman.

5 - FINDINGS OF FACT & CONCLUSIONS OF LAW

I.      Improper Deductions

Plaintiff claims that the two deductions for excess idling from his April 21, 2011 and May 4, 2011 paychecks were improper and violated ORS § 652.610. "An employer may not withhold, deduct or divert any portion of an employee's wages unless…[t]he deductions are authorized in writing by the employee, are for the employee's benefit and are recorded in the employer's books." ORS § 652.610(3)(b).

Of the requirements listed in ORS § 652.610, only one has been met—the employee authorization. Plaintiff signed an authorization to deduct excess idle time from his wages that were for his benefit. However, Plaintiff has shown that the deductions were not for his benefit and were not recorded accurately in Defendant's books. The evidence shows that Plaintiff idled the truck on April 13 – 14, 2011 for at least 19 hours to recharge the battery. Recharging the battery was for Defendant's benefit. The Sensor TRAC data from the April 15, 2011 extraction inaccurately recorded that the engine was idled for only 2.71 hours. The unreliability of this Sensor TRAC data puts in doubt the accuracy of Defendant's calculations regarding excess idling time. Although Defendant credited Plaintiff with 14 hours of idling time to "cure" the first deduction after Plaintiff complained, the 14 hour-credit was not sufficient. Additionally, Defendant's method of recording presumed that the excess idling deduction was for Plaintiff's benefit. Before the deduction may be taken, it must be determined to be for the employee's benefit. Here, the evidence shows that Plaintiff incurred excess idle time because he needed to idle the truck to recharge the battery. Plaintiff additionally testified that he did not idle the truck for personal reasons. I conclude that not all three requirements of ORS § 652.610 were met, and thus, Defendant improperly deducted idling charges from Plaintiff's wages.

6 - FINDINGS OF FACT & CONCLUSIONS OF LAW

Defendant raises the following defenses against the improper deduction claim: failure to object, laches, waiver, estoppel, and the doctrine of avoidable consequences. All of these defenses are based on the theory that Plaintiff failed to object to the excess idling deduction or failed to request additional idling time credit. Defendant has not sufficiently shown that Plaintiff waived his improper deduction claim or that Defendant was prejudiced or unable to defend against the claim. I conclude that none of these defenses are applicable.

The remedy for violation of ORS § 652.610 is "actual damages or $200, whichever is greater." ORS § 652.615. The court may also award the prevailing party costs and reasonable attorney fees. Id. Plaintiff's actual damage is $15.99 from the two deductions—$8.69 for the payroll ending April 20, 2011 and $7.30 for the payroll ending May 4, 2011. Plaintiff seeks $200 for each improper deduction, but I disagree that there are two violations. See Smith v. Woodward, No. 02-547-ST, 2003 U.S. Dist. LEXIS 25609, at *22 (D. Or. Sept. 30, 2003) (defendants made several unauthorized deductions, but plaintiff only entitled to actual damages or $200). Therefore, I award Plaintiff $200 in damages, costs, and reasonable attorney fees.

II.     Penalty Wages for Failure to Pay Wages Upon Termination

Plaintiff claims penalty wages for Defendant's failure to pay him all wages earned upon termination of his employment.

> [I]f an employer *willfully* fails to pay any wages or compensation of any employee whose employment ceases,…then, as a penalty for the nonpayment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced. However…[i]n no case shall the penalty wages or compensation continue for more than 30 days from the due date[.]

ORS § 652.150(1) (emphasis added). I have already concluded that Defendant improperly deducted $15.99 from Plaintiff's wages for idling time. If I find that Defendant willfully failed to pay the wages upon termination, then Plaintiff is entitled to penalty wages, in addition to the

7 - FINDINGS OF FACT & CONCLUSIONS OF LAW

$200 statutory damages already awarded under ORS § 652.615.  Wilson v. Smurfit Newsprint Corp., 107 P.3d 61, 75 (Or. Ct. App. 2005) ("[B]y withholding pay without authorization, defendant incurs penalty wages under ORS 652.150 and the $ 200 penalty under ORS 652.615.").

The word "willful" has a particular meaning under Oregon law.

> In civil cases the word wilful, as ordinarily used in courts of law, does not necessarily imply anything blamable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done was done or omitted intentionally.  It amounts to nothing more than this:  That the person knows what he is doing, intends to do what he is doing, and is a free agent.

Sabin v. Willamette-Western Corp., 276 Ore. 1083, 1093 (Or. 1976) (quotations omitted) (superseded on other grounds).  "An employer, then, willfully fails to pay wages owed at termination only if it is 'fully aware of [its] obligation to do so' but nonetheless consciously and voluntarily decides not fulfill that obligation."  Wilson, 107 P.3d at 69.  This definition of "willful" excludes the employer that does not know the employment has been terminated or the employer who made a mistake in the calculation of wages.  Id.  "[A]n action is willful if it is fully knowing, intentional, and voluntary."  Id. at 70.

I conclude that Defendant did not willfully withhold wages from Plaintiff.  The failure to a pay Plaintiff all his wages stems from the improper deductions that occurred months before Plaintiff quit Defendant's employ.  Plaintiff complained about the first deduction in April 2011 and received a credit of 14 hours for additional idling time.  At that point, Defendant thought the impropriety of the first deduction had been resolved, as Plaintiff did not contest the sufficiency of the 14-hour credit.  Nor did Plaintiff complain to Defendant about the second deduction in May 2011.  Thus, Defendant had no knowledge of its obligation to pay Plaintiff for the improper deductions.  The circumstances in this case are unlike the cases in which an employer withholds wages from the final pay based on its belief that the withholding is justified.  Id. at 71 (citing

cases in which employers withhold wages because of a shortage in cash receipts, a debt to the employer, and a failure to return equipment). Because I conclude that Defendant did not act willfully, I need not address whether the penalty wages would have been capped at 100% of the unpaid wages.

## CONCLUSION

Having weighed, evaluated, and considered the evidence presented at trial, I find that Defendant improperly deducted a portion of Plaintiff's wages in violation of ORS § 652.610, but Defendant did not willfully fail to pay Plaintiff all wages due upon termination in violation of ORS § 652.150. Plaintiff is awarded $200 in damages, costs, and reasonable attorney fees.

IT IS SO ORDERED.

Dated this 20th day of May, 2014.

_____
MARCO A. HERNÁNDEZ
United States District Judge